The validity of *N.J.A.C.* 7:8–5.5(h), as promulgated, is affirmed.

894 A.2d 1251

STANLEY PERLOWSKI, PLAINTIFF, v. ELSON T. KILLAM ASSOCIATES, INC., D/B/A KILLAM ASSOCIATES, HATCH MOTT MACDONALD GROUP, INC., AND PETER WICKENS, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, DEFENDANTS.

Superior Court of New Jersey
Law Division Civil
Somerset County

Decided September 27, 2005.[1]

---

[1] This opinion supersedes the Court's April 8, 2005, opinion and reflects only editorial changes.

*Loretta A. Castrovinci,* for plaintiff (*Kiernan & Campbell,* attorneys).

*Noel C. Crowley,* for defendants (*Crowley & Crowley,* attorneys).

DERMAN, P.J.Cv.

The question presented is whether in-house counsel authorized to perform work for other clients may bring a discrimination claim and a whistleblower claim. This determination will require the

court to determine if the attorney is an employee or an independent contractor.

If the court does not find that plaintiff is an employee, it must then determine if the law against discrimination provides an attorney any protection from termination of his services or if a client is free to terminate an attorney for any reason, even a discriminatory one.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Stanley Perlowski (plaintiff) began his tenure as "in-house" corporate counsel for defendant, the Killam Group (Killam), in 1987 and continued to act as "in-house" counsel after Killam was acquired by Hatch Mott McDonald ("HMM") until his termination.

Plaintiff was permitted to represent other clients during his employment with both Killam and HMM, but the matters of Killam and HMM were given priority. Specifically, plaintiff spent approximately eighty percent (80%) of his time working for Killam and HMM and about twenty percent (20%) of his time representing other clients, three municipalities, mostly in the evenings. Plaintiff's sole law office was located in Killam/HMM's building. Plaintiff's support staff, phone services, stationery, office supplies, postage, furniture, furnishings, law books, computer systems, and legal research software were all either provided or paid for by Killam/HMM. Plaintiff was paid by Killam/HMM and he also received annual "raises" in the form of increases to his hourly rate. In addition, plaintiff was provided with custom-made business cards by Killam/HMM that identified him as "corporate counsel."

In December of 2001, plaintiff objected to certain actions of HMM's Corporate Secretary, David White. Plaintiff alleges that White certified that two corporate resolutions had been fully authorized by consent of the directors when he knew they had not been. White has admitted that he executed the resolutions before the transactions had actually been authorized, for his own conven-

ience prior to his vacation. Because White knew that a truly unauthorized use of this documentation would be unlawful, he gave the documentation to plaintiff and instructed him not to release it without first hearing from him. Plaintiff complied with those instructions.

Shortly thereafter and without plaintiff's knowledge, Emil Herkert ("Herkert"), the president of Killam at the time, removed the prematurely executed documents from plaintiff's office in order to execute a closing on certain properties by December 31, 2001. Herkert has admitted to using the unsigned documents at the closing.

Plaintiff objected to Nick DeNichilo (DeNichilo), President of HMM, that the actions of White and Herkert represented "a fraudulent act; it was knowingly false."

Immediately following Herkert's use of the unsigned documents, Defendant Peter Wickens (Wickens) blamed plaintiff for the release of those documents. In an e-mail he sent to plaintiff, Wickens indicated that he felt that plaintiff had committed a breach of trust. Approximately one month after plaintiff's objection to DeNichilo about the actions in question, Wickens made the decision to terminate plaintiff. Herkert testified that Wickens instructed him to terminate plaintiff and find a replacement who Wickens could feel was "his own guy." Plaintiff was replaced by a younger counsel.

Plaintiff filed a complaint against the Killam, HMM, and several individual defendants (collectively defendants), alleging, inter alia, a violation of the New Jersey Conscientious Employee Protection Act (CEPA) *N.J.S.A.* 34:19–1–8. and a violation of the New Jersey Law Against Discrimination (LAD) *N.J.S.A.* 10:5–1–49 based on age discrimination.

Defendants argue that plaintiff is not entitled to invoke the protections of either CEPA or the LAD because he is not properly categorized as an employee. Defendants argue that the facts of this case illustrate that plaintiff did not occupy a true "in-house"

attorney position with HMM and therefore he is properly classified as an independent contractor. Independent contractors are not entitled to protection under CEPA or the LAD. Defendants also contend that plaintiff has failed to meet his *prima facie* burden under CEPA.

As to plaintiff's LAD claim, defendants argue that plaintiff is not entitled to the protections provided by the LAD with regard to the refusal to contract. Defendants argue that holding them liable for a refusal to contract would violate the provisions of the New Jersey Rules of Professional Conduct, which allow a client to terminate representation at any time, with or without cause.

Plaintiff contends that his employment status should be defined as in-house corporate counsel, not as an independent contractor. Plaintiff therefore argues that he is, indeed, entitled to the protections afforded under either the LAD and CEPA. In addition, plaintiff asserts that he may also sustain a claim for refusal to contract as provided under the LAD.

## *LEGAL ANALYSIS*

Pursuant to *R.* 4:46–2(c) a motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any... show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to judgment or order as a matter of law." When deciding a motion for summary judgment under *R.* 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational fact-finder to resolve the alleged disputed issue in favor of the non-moving party. *Brill v. The Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995). The assessment of the evidence is to be conducted in the same manner as that required under *R.* 4:37–2(b).

In considering the evidential materials presented, this court's function is not to weigh the evidence and determine the truth of the matter, but rather this court is to determine whether there is a genuine issue for trial. *Brill,* 142 *N.J.* at 540, 666 *A.2d* 146 (citing *Anderson v. Liberty Lobby Inc.,* 477 *U.S.* 242, 249, 106 *S.Ct.* 2505, 91 *L.Ed.2d* 202 (1986)). "If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46–2." *Ibid.* Moreover, "where the evidence 'is so one-sided that one party must prevail as a matter of law,' the trial court should not hesitate to grant summary judgment." *Ibid.*

## I. *PLAINTIFF'S DISTINCTION AS EMPLOYEE OR INDEPENDENT CONTRACTOR*

Plaintiff's complaint, in part, alleges violations of CEPA and LAD. As an initial matter, this court must determine if plaintiff can be classified as an employee with regard to these two acts because independent contractors are not entitled to the protections provided by these acts. *Pukowsky v. Caruso,* 312 *N.J.Super.* 171, 180, 711 *A.2d* 398 (App.Div.1998); *DaBronzo v. Roche Vitamins, Inc.,* 232 *F.Supp.2d* 306, 312–13 (D.N.J.2002) (predicting that New Jersey courts would find "no convincing rationale for extending CEPA to independent contractors"). In its decision in *Pukowsky v. Caruso,* the Appellate Division utilized the twelve part "totality of the circumstances test" established in *Franz v. Raymond Eisenhardt & Sons, Inc.,* 732 *F.Supp.* 521, 528 (D.N.J.1990) (*citing E.E.O.C. v. Zippo Mfg. Co.,* 713 *F.2d* 32, 37 (3rd Cir.1983)), to distinguish between an independent contractor and an employee under the LAD. *Pukowsky, supra,* 312 *N.J.Super.* at 182–83, 711 *A.2d* 398.[2] Under this test a court utilizes the following factors to determine a worker's status:

---

[2] The New Jersey District Court subsequently utilized the *Pukowsky* test to distinguish between an employee and an independent contractor in *DaBronzo, supra,* 232 *F.Supp.2d* at 316.

(1) the employer's right to control the means and manner of the worker's perform-ance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.
[*Ibid.*].

The most important factor under the *Pukowsky* test is the employer's right to control the means and manner of the worker's performance. *Chrisanthis v. County of Atlantic,* 361 N.J.Super. 448, 455, 825 A.2d 1192 (App.Div.2003). Majority rule does not apply and " '[a] principled application' of the factors and a consideration of which factors are more important under the peculiar circumstances" is necessary when making the employee—independent contractor analysis. *Id.* at 456, 825 A.2d 1192 (citing *Pukowsky, supra,* 312 N.J.Super. at 183, 711 A.2d 398).

In this matter, plaintiff argues that he is entitled to the protections of CEPA and the LAD because of his status as in-house counsel. At least one New Jersey court has permitted an in-house attorney to bring a claim under CEPA. In *Parker v. M & T Chems., Inc.,* 236 N.J.Super. 451, 460–62, 566 A.2d 215 (App.Div. 1989), the Appellate Division found that CEPA did not interfere with the court's regulation of the legal profession. That case, however, did not involve circumstances requiring a distinction between an employee and an independent contractor with regard to an in-house attorney.

As an initial matter, this court finds that the *Pukowsky* test presents several difficulties when applied to an in-house attorney. An in-house counsel cannot easily be said to be controlled or supervised by the company because of the nature of the work and because she or he may often be the sole attorney working for the company. Similarly, it is difficult to say whether the work of an in-house attorney is an "integral part of the business."

The dearth of precedent regarding the classification of an in-house attorney under these statutes drove this court to consider

the manner in which other jurisdictions have construed similar language in their statutes. *See Higgins v. Pascack Valley Hosp.,* 158 *N.J.* 404, 422, 730 *A.2d* 327 (1999) (explaining how the New Jersey Supreme Court referred to New York and Michigan "whistleblower" statutes as a guide in determining whether CEPA protection extends to employees who report the misconduct of other employees). The tests employed to categorize an in-house attorney as either an employee or independent contractor have not focused on the control-related factors. *See Chilingirian v. Fraser,* 194 *Mich.App.* 65, 486 *N.W.2d* 347, 349 (1992) (declining to apply the control test in favor of the economic realities test). Other jurisdictions have chosen to focus on factors which include: (1) whether the attorney is dependent upon the entity for his or her sole income, benefits, and pensions; (2) whether the attorney devotes all of his or her time to work for the entity; (3) whether the attorney's hours of employment and nature of work are usually determined by the entity; (4) whether matters of compensation, promotion, and tenure are ordinarily subject to the same administrative personnel supervision as other company employees; (5) whether plaintiff was subject to the control of the entity with respect to the method of his or her work, or only with respect to the results to be achieved. *See Chilingirian, supra,* 486 *N.W.2d* at 349 (discussing relevancy of pension programs, devotion of time, and control over methodology); *Crews v. Buckman Labs. Int'l, Inc.,* 78 *S.W.3d* 852, 861 (Tenn.2002) ("[l]ike other non-lawyer employees, an in-house counsel is dependent upon the corporation for his or her sole income, benefits, and pensions") (citing *Nordling v. N. States Power Co.,* 478 *N.W.2d* 498, 502 (Minn.1991)).

In this matter, plaintiff was not solely dependent upon Killam or HMM for his income. Plaintiff indicates that from the years 2000 through 2002 he earned approximately $627,627 from Killam by billing for his services. During that same time, however, plaintiff earned approximately $94,725 from outside sources, which represented approximately twenty percent (20%) of his time. That is not an insubstantial amount. As a result, plaintiff was not completely economically dependent on Killam/HMM. In addition,

plaintiff was not involved in the pension program provided by Killam/HMM, Killam/HMM did not deduct taxes or social security taxes from the money paid to plaintiff, and plaintiff's medical and vacation leave were not provided by Killam/HMM. These facts weigh in favor of construing plaintiff as an independent contractor.

The record does not provide conclusive proof that plaintiff was subject to Killam/HMM's control with respect to the methodology of his work. This court finds that the fact that plaintiff was instructed not to release the documentation in question is not sufficient to indicate control over methodology. The record does not indicate whether it was common practice for plaintiff to receive instructions from Killam/HMM or whether this amounted to an isolated incident. As an attorney, plaintiff would be required to exercise his independent knowledge, expertise, and judgment. No other employee had plaintiff's skill sets and training. The record is equally insufficient with regard to whether Killam/HMM determined plaintiff's hours of employment or the nature of that work. For this reason, the court finds that any consideration of these additional factors does not favor either party. That plaintiff supervised "outside counsel" or attended annual parties is of no moment.

Lastly, this court recognizes that there are some factors that would weigh in favor of finding plaintiff to be an employee. For instance, plaintiff's equipment and workplace were provided by defendants, but, as in *DaBronzo v. Roche*, that is not determinative and the Appellate Division in *Chrisanthis v. County of Atlantic*, 361 *N.J.Super.* 448, 458, 825 *A*.2d 1192 (App.Div.2003), considered it of "low relative weight." In addition, defendants provided plaintiff with "promotions" in the form of an increased hourly rate.

Although there are factors favoring a finding of employee status, absolute unanimity is not required to support summary judgment. *Id.* at 465, 825 *A*.2d 1192. This court must balance those factors supporting employee status with those supporting independent contractor status. *Ibid.* This court finds that the

relevant factors weigh in favor of finding independent contractor status.

Because this court finds that Killam/HMM employed plaintiff as an independent contractor and not as an employee, plaintiff is barred from asserting a claim under either CEPA or the LAD by virtue of *N.J.S.A.* 10:5–12(a).

## II.   *PLAINTIFF'S CLAIM FOR DEFENDANTS' REFUSAL TO CONTRACT*

Plaintiff has alleged in the alternative that if he were not determined to be an employee for purposes of the LAD under *N.J.S.A.* 10:5–12(a), he is still afforded protection under the LAD through *N.J.S.A.* 10:5–12(*l*).   Plaintiff asserts that *N.J.S.A.* 10:5–12(*l*) provides him protection as an independent contractor from termination of his services because of age discrimination.

As opposed to *N.J.S.A.* 10:5–12(a), which prohibits discrimination in the hiring and discharging and in the terms and conditions of employment, *N.J.S.A.* 10:5–12(*l*) prohibits an employer from refusing to do business or terminating independent contractors because of a protected characteristic.   *Rubin v. Chilton*, 359 *N.J.Super.* 105, 109–10, 819 *A.*2d 22 (App.Div.2003).   Stated in another manner, *N.J.S.A.* 10:5–12(a) prohibits workplace discrimination while *N.J.S.A.* 10:5–12(*l*) prohibits discrimination in regard to the refusal "to deal."   *Id.* at 110, 819 *A.*2d 22.   *N.J.S.A.* 10:5–12(*l*) states in relevant part:

It shall be an ... unlawful discrimination:

. . .

*l.*   For any person to refuse to buy from, sell to, lease from or to, license, contract with, or trade with, provide goods, services or information to, or otherwise do business with any other person on the basis of the race, creed, color, national origin, ancestry, age, sex ... of such other person....

Defendants argue that plaintiff should be barred from presenting a claim for refusal to contract or continue to contract because such a claim would be contrary to the longstanding rule of professional conduct that allows a client to terminate representation at any time "with or without cause."   Defendant relies on the

Supreme Court's decision in *Cohen v. Radio–Elecs. Officers Union,* 146 *N.J.* 140, 679 *A.*2d 1188 (1996), to argue that an attorney cannot require a client to accept or pay for legal services that may no longer be desired.

In *Cohen,* the Supreme Court reviewed the validity of a renewable one-year retainer agreement for legal services and its relevant notice provisions in connection with a client's desire to terminate representation. *Cohen, supra,* 146 *N.J.* at 148–50, 679 *A.*2d 1188. The *Cohen* Court found that "[a]s a matter of public policy, retainer agreements may not limit unreasonably a client's right to discharge an attorney." *Id.* at 160, 679 *A.*2d 1188. The seminal issue in *Cohen* was the applicability of a contractual provision that appeared to violate the long-standing rule that representation could be terminated by the client at any time with or without cause. *See R.P.C.* 1.16. The *Cohen* Court ultimately found that "[t]he lawyer ... may not coerce the client into continuing the relationship by a provision that either prohibits the client from discharging the lawyer or requires the client to pay excessive fees if it discharges the lawyer." *Id.* at 162, 679 *A.*2d 1188.

This court finds that the decision in *Cohen* provides little instruction with regard to the viability of plaintiff's claim under *N.J.S.A.* 10:5–12(*l*). Although the Supreme Court reaffirmed a client's right to terminate without cause, nothing in the *Cohen* decision could be construed to permit a client to refuse to contract for impermissible reasons. Impermissible discriminatory reasons are the focus of *N.J.S.A.* 10:5–12(*l*) and its preventative nature is not undercut by the Supreme Court's decision that a client cannot be forced by contract to continue an undesired representation. This court finds that, although a client may decide to terminate representation without cause, nothing prevents an attorney from alleging that the client's decision to refuse to contract was motivated by impermissible reasons pursuant to *N.J.S.A.* 10:5–12(*l*).

This court finds that this decision is consistent with the Appellate Division's decision in *Parker, supra,* 236 *N.J.Super.* 451, 566 *A.*2d 215. In *Parker,* the Appellate Division found that an in-

house attorney's CEPA claim was not unconstitutional based on the apparent tension between the CEPA and *R.P.C.* 1.16 (Declining or Terminating Representation).[3] *Parker, supra,* 236 *N.J.Super.* at 460–63, 566 *A.*2d 215. The Appellate Division in *Parker* found that the Supreme Court had previously decided that it did not have sole "authority over judges, attorneys, and the practice of law" for all purposes and under all circumstances. *Id.* at 461, 566 *A.*2d 215. The *Parker* court found that an important question was "whether such legislative action can be reconciled with the Supreme Court's preeminent, exclusive and extensive constitutional powers over the judicial branch of government." *Ibid.* (quoting *Knight v. Margate,* 86 *N.J.* 374, 387, 431 *A.*2d 833 (1981)). In *Parker,* the court found that CEPA "serve[d] an important, legitimate governmental purpose clearly within the State['s] police powers and deals with a direct and vital concern of the legislature ...." *Ibid.* There is no doubt that the LAD's goal of preventing invidious discrimination in the contracting of business, as provided by *N.J.S.A.* 10:5–12(*l*), is no less a legitimate governmental purpose. The *Parker* court also found that CEPA does not interfere with the court's regulation of attorneys. *Id.* at 461–62, 566 *A.*2d 215. It also found that CEPA "neither compels an employer-client to accept an unwanted employee-attorney by preventing his discharge at will nor threatens to discourage an ethics or fee dispute complaint." *Ibid.* The court limited its holding to compelling "a retaliating employer to pay damages to an employee-attorney who is wrongfully discharged or mistreated." *Ibid.* The court specifically stated that nothing in its opinion prevented the employer from "show[ing] that the discharge was animated by incompetence, disloyalty, reduction in force, or any other legitimate reason." *Ibid.*

---

[3] This court finds little cause for concern based on the fact that *Parker* involved an in-house attorney and CEPA rather than an independent attorney and the LAD. Both in-house and outside attorneys are subject to the same Rules of Professional Conduct. Furthermore, although the CEPA does not provide protection to independent contractors, the LAD does through *N.J.S.A.* 10:5–12(*l*). *Rubin, supra,* 359 *N.J.Super.* at 109–110, 819 *A.*2d 22.

This court's decision simply compels any person or entity who refuses to contract or terminates for impermissible reasons to answer for such improper motives and to possibly pay damages to an attorney with whom that person wrongfully refuses to contract. This court's decision therefore cannot be viewed as "foist[ing] unwanted counselors on public or even private clients." *Ibid.* Nothing in this court's decision prevents a person from showing that the refusal was predicated on any other legitimate reason.

For these reasons, defendants' motion for summary judgment is hereby granted with respect to Plaintiff's claim under CEPA and plaintiff's claim under LAD pursuant to *N.J.S.A.* 10:5–12(a). Defendants' motion for summary judgment is hereby denied with respect to plaintiff's claim under the LAD pursuant to *N.J.S.A.* 10:5–12(*l*).