**Thomas F. DaBRONZO, Plaintiff,**

v.

**ROCHE VITAMINS, INC.; John Does 1–5 and ABC Corp.1–5; jointly severally, and in the alternative, Defendants.**

**No. CIV.A. 02–227(AET).**

United States District Court,
D. New Jersey.

Oct. 17, 2002.

Christine P. O'Hearn, Brown & Connery, Westmont, NJ, for Plaintiff.

John A. Ridley, Drinker, Biddle & Shanley, LLP, Florham Park, NJ, for Defendants.

## OPINION

WOLFSON, United States Magistrate Judge.

The primary issue presented on this motion for summary judgment by defendant Roche Vitamins, Inc. ("RVI") is whether the protections afforded employees by the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.,* ("CEPA") extend to independent contractors. This Court[1] holds that an independent contractor, such as the plaintiff here, Thomas DaBronzo ("plaintiff" or "DaBronzo"), who complains to his employer about the alleged misconduct of another business entity with whom the employer has a business relationship, has no cause of action against the other business entity under CEPA. Therefore, defendant's motion for summary judgment is granted.

### Background

Plaintiff was employed as a foreman for Perimeter, Inc. ("Perimeter"), an insulation and asbestos contractor, until he was terminated on December 13, 2001. For thirty·years, plaintiff worked exclusively at RVI's manufacturing plant in Belvidere, New Jersey, first for the Woolsulate Corporation, and then for Perimeter. RVI, a manufacturer of bulk vitamin C and other vitamin premixes, had a contractual relationship with Woolsulate and continues to have a contractual relationship with Perimeter for insulation installation and routine maintenance projects, including asbestos removal. *See* Plaintiff's Opposition Brief, Exhibit B[2]. Neither party contests that RVI exercised its contractual right to have Perimeter remove plaintiff from the RVI manufacturing site. However, the parties vigorously contest the facts which precipitated that removal and which caused Perimeter to terminate plaintiff from its em-

---

1. The parties have consented to the jurisdiction of a United States Magistrate Judge, pursuant to 28 U.S.C. (a) § 636(c), and FED. R. CIV. P. 73.

2. During oral argument on September 20, 2002, the Court ordered that the exhibits attached to the parties' briefs be made part of the record.

ploy.[3]

Plaintiff has chosen not to sue Perimeter, his direct employer, and proceeds only against RVI. For purposes of this motion, the reasons for plaintiff's termination are not relevant. Instead, the following undisputed facts are pertinent to the issue whether plaintiff can assert a CEPA claim against RVI.

### Material Facts

Perimeter was the "resident contractor" for the Belvidere, New Jersey RVI site. *See* Plaintiff's Opposition Brief, Exhibit B. In this capacity, Perimeter was offered routine insulation maintenance projects without having to go through a formal bidding process. According to the contract between Perimeter and RVI, DaBronzo was listed as Perimeter's general foreman assigned exclusively to the RVI site. *See id.* (Proposal at ¶ 6.0). As the general foreman and Perimeter's on-site representative, RVI funneled work directly to plaintiff in the form of work orders and DaBronzo then distributed the assignments to Perimeter personnel for execution. At all times, RVI reserved the right to constrain Perimeter's expenses to conform to RVI's budgetary limits. Likewise, RVI management was on-site, observing Perimeter's performance to ensure compliance with federal and state safety regulations, which included regulating the manner in which the asbestos was removed and handled.

It is undisputed that Perimeter was plaintiff's direct employer, issued his paychecks, made the appropriate tax and social security deductions, set plaintiff's vacation schedule, and maintained plaintiff's pension and retirement package, inclusive of any employee benefit plans. Plaintiff was also a member of Local 89 of the International Association of Heat and Frost Insulators and Asbestos Workers, with whom Perimeter, not RVI, had a collective bargaining agreement. On the other hand, plaintiff was not eligible for any employee benefits or incentives offered to employees of RVI:

"CONTRACTOR [Perimeter] is responsible for staffing the Services and providing any and all compensation and/or insurance to its staff members. RVI shall not be responsible for withholding, and shall not withhold, FICA or taxes of any kind from any payments it owes to CONTRACTOR. CONTRACTOR agrees to comply with all laws related to payment of income taxes for individuals providing services hereunder .... Further, as independent contractors, neither CONTRACTOR nor any of [RVI's] benefit plans, programs, employment policies or procedures or workers' compensation insurance...". *Id.* (Resident Insulation Services Agreement at ¶ 11.12).

Pursuant to the contract, Perimeter provided all of the equipment and supplies necessary for the performance of its tasks. "On a cost plus fixed fee basis, [Perimeter]

---

**3.** Plaintiff alleges that during the fall of 2001, he brought several asbestos related safety and environmental concerns to the attention of RVI management, but that RVI was unwilling to address the asbestos problem. *See* Complaint, ¶¶ 8, 9, 12. Nonetheless, plaintiff claims that he continued to voice his concerns about safety violations, *id.* at ¶ 11, and was terminated by Perimeter shortly thereafter. *Id.* at ¶ 13. DaBronzo asserts that RVI demanded that Perimeter fire him in retaliation for his whistleblower activities. *Id.* at ¶ 15–16. Furthermore, plaintiff alleges that Perimeter was forced to accede to RVI's demands in order to preserve the contractual relationship it enjoyed with RVI. RVI denies these allegations and asserts that it directed Perimeter to remove plaintiff from its site because of improper behavior, but that it took no steps to affect his relationship with Perimeter or the union of which he was a member. *See* Defendant's Moving Brief at 1.

shall provide all supervision, labor, equipment, and materials required to complete construction, repair, installation, maintenance projects (the "Services") in connection with the RVI facility . . .". *See* Pursell Decl. ¶ 2.1(a). Perimeter's control over labor and equipment necessitated that plaintiff attend regular RVI on-site meetings to coordinate efforts and maximize efficiency. Finally, it is not disputed that RVI exercised its contractual right to request that Perimeter remove DaBronzo from the RVI site, and further, that Perimeter terminated DaBronzo from its employ.

At the initial scheduling conference with the Court, the parties properly focused on the issue of whether plaintiff was an independent contractor to RVI and whether CEPA covers independent contractors. Consequently, I directed that discovery proceed on the issue of plaintiff's relationship with RVI. As a result, plaintiff deposed Robert B. Pursell, Manager of Contractor Services for RVI. Although plaintiff claims that this motion for summary judgment is premature due to the infancy of the discovery process, he has no discovery requests pending, and has failed to identify any specific additional discovery necessary to defend against the motion. Finally, plaintiff has not filed any opposing affidavits. Therefore, I conclude that this motion is ripe for resolution.

### *Summary Judgment Standard*

A moving party is entitled to judgment as a matter of law where there is no genuine issue as to any material fact. *See* FED R. CIV. P. 56(c); *Brooks v. Kyler,* 204 F.3d 102, 105 n. 5 (3d Cir.2000) (*citing* FED R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). The burden of demonstrating

the absence of a genuine issue of material fact falls on the moving party. *See Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 305 (3d Cir.1999) (citations omitted). Once the moving party has satisfied this initial burden, the opposing party must identify "specific facts which demonstrate that there exists a genuine issue for trial." *Orson,* 79 F.3d at 1366.

Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, the nonmoving party cannot rest upon mere allegations; he must present actual evidence that creates a genuine issue of material fact. *See* FED R. CIV. P. 56(e); *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 (*citing First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). In conducting a review of the facts, the non-moving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. *See Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). Accordingly, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks,* 204 F.3d at 105 n. 5 (*citing Anderson,* 477 U.S. at 249, 106 S.Ct. 2505); *Big Apple BMW v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

RVI asserts that summary judgement is appropriate in this case because independent contractors are not covered by CEPA and that plaintiff was an independent contractor, not an RVI employee. By contrast, plaintiff asserts that independent contractors are covered by CEPA, and

that CEPA extends to plaintiff's claim because RVI is "another employer" as defined under the statute. Alternatively, plaintiff contends that the Court should find that he was an employee, and not an independent contractor of RVI, and, thus, is afforded protection under CEPA.

## I. The New Jersey CEPA Does Not Extend to Independent Contractors

As a federal court sitting in diversity, pursuant to 28 U.S.C. § 1332(a), I am obligated to apply the substantive laws of the State of New Jersey. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties agree that no reported New Jersey case has addressed whether CEPA protections extend to independent contractors. Certainly, the statute does not, by its express terms, include independent contractors. In cases such as this, where neither the New Jersey Supreme Court nor the Appellate Division has spoken on an issue, this Court must base its decision on a prediction of how the New Jersey Supreme Court would interpret the question. *See Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 516 (3d Cir.1997); *see also, City of Erie v. Guaranty National Ins. Co.*, 109 F.3d 156, 159–60 (3d Cir. 1997)(where Pennsylvania had not yet decided whether the tort of malicious prosecution occurs for purposes of insurance coverage, federal court would predict what the Pennsylvania Supreme Court would decide if confronted with the question). Accordingly, I have considered New Jersey Supreme Court CEPA decisions, that Court's approach to employment cases, as well as the remedial nature of the statute, to assist me in predicting how the New Jersey Supreme Court would decide the issue presented here.

CEPA, enacted in 1986 to encourage employees to notify authorities of any and all illegal or unethical work-place activities conducted by an employer, provides:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer or another employer, with whom there is a business relationship, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or

c. Objects to, or refuses to participate in any activity, policy practice which the employee reasonably believes:(1) is in violation of a law, or a rule or regulation promulgated pursuant to law or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care; (2) is fraudulent or criminal; or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. 34:19-3. Thus, CEPA protects an employee "who believing that the public

interest overrides the interest of the organization he serves, publicly 'blows the whistle' if the organization is involved in a corrupt, illegal, fraudulent, or harmful activity". *See Abbamont v. Board of Educ.*, 138 N.J. 405, 650 A.2d 958 (1994) (*quoting* Ralph Nader et al., *Whistleblowing: The Report of the Conference on Professional Responsibility* vii (Ralph Nader et al., 1972)).

Like New Jersey's Law Against Discrimination ("LAD" or "NJLAD"), CEPA reflects a "reaffirmation of [New Jersey's] repugnance to an employer's retaliation against an employee who has done nothing more than assert statutory rights and protections and a recognition by the Legislature of a preexisting common-law tort cause of action for such retaliatory discharge". *Lally v. Copygraphics*, 85 N.J. 668, 678, 428 A.2d 1317 (1981). Indeed, New Jersey has consistently advanced a strong public policy against work place discrimination and promotes liberal construction of statutes and policies to further the remedial goals of all anti-discrimination work place protective legislation. "In enacting the NJLAD, the New Jersey Legislature expressed a strong public policy in protecting the State's residents against the practice of discrimination, which as the Legislature declared, 'threatens not only the rights and proper privileges of the inhabitants of this state, but menaces the institutions and foundations of a free democratic state'." *See Finding and Declaration of Legislature* N.J.S.A.10:5–3. With that policy framework in mind, the issue whether CEPA's reach extends to independent contractors will now be examined.

Under CEPA, an "employee" is "any individual who performs services for and under the control and direction of an employer". N.J.S.A. 34:19–2(b). In those few instances where the New Jersey courts have interpreted the term "employee" under CEPA they have construed it "liberally to achieve the remedial purpose of the statute".[4] *Abbamont* at 431, 650 A.2d 958; *see also, Lepore v. National Tool and Manufacturing*, 224 N.J.Super. 463, 470, 540 A.2d 1296 (App.Div.1988)(holding that "CEPA was intended as 'comprehensive legislation' and that the term 'employee' is broadly defined encompassing both union and nonunion employees"). But the New Jersey courts have not yet addressed whether CEPA extends to independent contractors.

When lacking in New Jersey precedent, the New Jersey Supreme Court has historically looked first to the Legislature's intent and thereafter to how sister jurisdictions have construed similar language in their comparable "whistleblowing" statutes. *See Higgins v. Pascack Valley Hospital*, 158 N.J. 404, 422, 730 A.2d 327 (1999)(guided by New York and Michigan "whistleblower" statutes in determining whether CEPA protection extends to employees who report "the misconduct of co-employees").

Likewise, CEPA contains no express term "independent contractor". This exclusion is consistent with the Legislature's enactments in sister jurisdictions, and is in harmony with the interpretations given by those states courts and New Jersey and federal courts interpreting analogous workforce protection statutes. *See Stephens v. Prudential Ins. Co. of America*,

---

4. Liberal construction will not, however, guarantee employee status regardless of the circumstances. *See, e.g., Beck v. Tribert*, 312 N.J.Super. 335, 711 A.2d 951 (App.Div.1998)(declining to extend CEPA's protections to "former employees" due to the Legislature's failure to provide express language in the statute to that effect). *Id.* at 344, 711 A.2d 951.

278 A.D.2d 16, 717 N.Y.S.2d 144 (1st Dep't 2000)(holding that a physician who was an independent contractor employed by a health care plan was not entitled to the protection of New York's statute prohibiting retaliatory discharge); *Chilingirian v. City of Fraser*, 504 N.W.2d 1, 200 Mich. App. 198 (1993)(holding that an attorney who performed services for the city was an independent contractor and, therefore, not entitled to protection under the Michigan Whistleblower Protection Act); *Pukowsky v. Caruso*, 312 N.J.Super. 171, 184, 711 A.2d 398 (App.Div.1998) (NJLAD does not to apply to independent contractors); *EEOC v. Zippo Mfg. Co.*, 713 F.2d 32, 35 (3d Cir.1983) (independent contractors are not protected by the ADEA); *Birchem v. Knights of Columbus*, 116 F.3d 310, 312 (8th Cir.1997) (ADA does not protect independent contractors); *Barnhart v. N.Y. Life Ins. Co.*, 141 F.3d 1310, 1313 (9th Cir.1998)(independent contractors not protected by ADEA or ERISA); *cf. Hardin v. DuPont Scandinavia*, 731 F.Supp. 1202, 1206 (S.D.N.Y.1990)(an independent contractor cannot state a claim for relief under the False Claims Act).

### A. The NJLAD Does Not Extend Protection to "Independent Contractors".

In *Pukowsky, supra.* the New Jersey Appellate Division held that independent contractors are not "employees" under the NJLAD. There, Pukowsky, a roller skating instructor who gave lessons at defendant's roller skating rink, sued the rink and its owner for sexual harassment under the NJLAD after she was barred from using the rink. Defendants sought to dis-miss her complaint asserting that plaintiff's status as an independent contractor was beyond the reach of the NJLAD.[5] Because New Jersey had not yet addressed whether the NJLAD covers independent contractors, the court looked to other state civil rights acts and federal anti-discrimination laws to assist it in deciding whether the NJLAD protects them. *Id.* at 183, 711 A.2d 398.

I am mindful of "the important public policies of the LAD and CEPA and the need to construe the statutes liberally to achieve those policies", *Abbamont* at 418, 650 A.2d 958, and that "[i]n CEPA actions, as in LAD actions, 'the employer is the party with the power and responsibility to hire, promote, reinstate, provide back pay, and take other remedial action' ". *Id.* at 418, 650 A.2d 958, *quoting Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 617, 626 A.2d 445 (1993). Nonetheless, despite the mandate that the NJLAD be construed liberally, it has not been construed to extend its protections to independent contractors. Likewise, liberal construction of CEPA is not without bounds. "Despite being liberally construed by the New Jersey courts, New Jersey's (CEPA) is not intended to shelter every alarmist who disrupts his or her employer's operations by constantly declaring that illegal activity is afoot, or is about to be afoot". *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 94 n. 4 (3rd Cir.1999). Similarly, there is no convincing rationale for extending CEPA to independent contractors when the independent contractor may seek redress from his direct employer—who controls his salary, demotion, hiring, firing,

---

**5.** Pukowsky solicited her own clients, received payment directly from her clients, and indicated on her tax return that she was a "sole proprietor". 312 N.J.Super. at 174, 711 A.2d 398. Although the court discussed several tests which have been utilized by courts to determine whether someone is an employee, it did not announce a preference. *Id.* at 182, 711 A.2d 398. The court concluded that Pukowsky was an independent contractor under any of the relevant tests.

and terms of employment. *See e.g. Lehmann, supra.* at 617, 626 A.2d 445.

### B. Other States do not Extend Their "Whistleblower" Statutory Protection to Independent Contractors.

In the past, the New Jersey Supreme Court has looked to other states for guidance when construing matters of first impression under CEPA. Specifically, in *Higgins,* the New Jersey Supreme Court was asked to decide whether CEPA protects an employee who was discharged after "blowing the whistle" on a co-employee. 158 N.J. 404, 730 A.2d 327. In holding that this type of activity is covered under CEPA, the Supreme Court considered the policy and legislative intent of CEPA. *Id.* at 420–421, 730 A.2d 327. Additionally, the Court was guided by the law in other states, including New York and Michigan. *Id.* at 422, 730 A.2d 327. In so doing, the New Jersey Supreme Court noted that New York's "whistleblower" law [6] is substantively the same as CEPA. *Id.*

Both the New York and Michigan "whistleblower" statutes have been construed to exclude independent contractors from their ambit of protections and remedies. While the New York Whistleblower Statute expressly provides that "[i]t shall be a defense that the individual was an independent contractor", N.Y. Labor § 740(3)(c), Michigan's Whistleblower Protection Act [7] has been judicially interpreted as not applying to independent contractors. *Chilingirian,* 200 Mich.App. 198, 504 N.W.2d 1. Several other states are in accord.. [8] *See McClure v. American Mut. Ins. Co.,* 29 F.Supp.2d 1046 (D.Minn.1998), *affirmed* 223 F.3d 845 (8th Cir.2000)(holding that the Minnesota whistleblower statute did not apply to insurance agents who were independent contractors); *see also Rankin v. City of Philadelphia,* 963 F.Supp. 463 (E.D.Pa.1997)(stating that Pennsylvania's whistleblower statute does not apply to independent contractors).

### C. Federal Anti–Discrimination Laws Exclude Independent Contractors

Traditionally, federal precedent in the anti-discrimination employment area has provided the New Jersey courts with a compass to navigate the unchartered waters of the NJLAD. For example, in *Pukowsky,* in the absence of New Jersey precedent, the Appellate Division looked to federal precedent to guide it in resolving whether independent contractors are covered by the NJLAD. "In construing the terms of the LAD, this court has frequently looked to federal precedent governing Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e to 2000–17, ("Title VII"), as a 'key source of interpretive authority' ". *Id.* at 178, 711 A.2d 398, (*quoting Lehmann,* 132 N.J. 587, 600–601, 626 A.2d 445). After surveying trends in federal employment discrimination law, *Pukowsky* acknowledged that independent contractors are not considered employees for purposes of extending protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e to 2000–17, the federal Age Discrimination in Employment Act, 29 U.S.C § 621, (ADEA) and the Americans with Disabilities Act, 42 U.S.C. § 12101(ADA). *See Pukowsky* at 179, 711 A.2d 398. Interestingly, the Appellate Division also referenced the New York Hu-

---

**6.** N.Y. Labor Law § 740 (McKinney 1998).

**7.** Mich. Comp. Laws §§ 15.361 *et seq.*

**8.** It is noteworthy that two of the states which do not extend whistleblower protection to independent contractors, New York and Michigan, are the same two states that New Jersey has previously looked to for guidance when construing the terms of CEPA. *See Higgins,* 158 N.J. 404, 730 A.2d 327.

man Rights Law[9] and the Michigan Civil Rights Law[10] which either expressly exclude independent contractors from protection, or have been judicially interpreted to do so. *Id.; cf. Higgins,* 158 N.J. 404, 730 A.2d 327 (New Jersey Supreme Court considered the policies of Michigan and New York).

A review of New Jersey case law and policy, as well as other states' "whistleblower" statutes, compels me to conclude the New Jersey Legislature purposefully excluded independent contractors from the protections afforded employees under CEPA. Indisputably the courts have divined that CEPA be construed liberally to achieve its remedial purpose. Although that same policy underlies the NJLAD, it has been judicially decreed that independent contractors are not protected under that statute. *Pukowsky, supra.* Since both CEPA and NJLAD serve similar remedial goals, it is unlikely that the New Jersey courts would distinguish between these statutes to expand the definition of employee under CEPA. Secondly, a plain reading of the statute supports the conclusion that the legislature did not intend to include independent contractors within the definition of "employee". Had it been the intent of the New Jersey Legislature to provide CEPA protection for independent contractors, it could have done so when it amended CEPA in 1989 to prevent retaliation for reporting the illegal activities of "another employer". *See infra.,* pp. 14–16. Thirdly, other states to which New Jersey courts have historically looked to for assistance, have analyzed the issue and determined that independent contractors are not protected by their whistleblower statutes. Finally, excluding independent contractors from CEPA protection, as do the NJLAD, ADEA, ADA, Title VII, and ERISA, promotes uniformity in the employment law arena.

## II. Neither CEPA, as Amended, Nor Barratt v. Cushman & Wakefield Extends Liability to RVI for Plaintiff's Termination by Perimeter

■ Plaintiff asserts, in the alternative, that RVI qualifies as "another employer" for purposes of CEPA, N.J.S.A. 34:19–3(a), and is liable for his termination by Perimeter. Pursuant to CEPA, "employer" is defined as follows:

> " 'Employer' means any individual, partnership, association, corporation, or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent and shall include all branches of State Government, or the several counties and municipalities thereof, or any special district, or any authority, commission, or board or any agency or instrumentality thereof". N.J.S.A. 34:19–2(a).

In 1989, the New Jersey Legislature amended CEPA to protect against retaliation for reporting the illegal activities of "another employer". Accordingly, CEPA protects whistleblowers who disclose or threaten or disclose to a supervisor an activity by an employer or "another employer with whom there is a business relationship". N.J.S.A. 34:19–3(a). Plaintiff contends that because RVI and Perimeter have a "business relationship", RVI is liable to Plaintiff under CEPA. In support of this contention, plaintiff relies on *Barratt v. Cushman & Wakefield of N.J., Inc.,* 144

---

**9.** NY Exec. Law § 296(1)(a); *see also Scott v. Massachusetts Mut. Life Ins. Co.,* 86 N.Y.2d 429, 633 N.Y.S.2d 754, 657 N.E.2d 769 (1995).

**10.** M.C.L.A. § 37.2202; *see also Falls v. Sporting News Pub. Co.,* 834 F.2d 611 (6th Cir.1987).

N.J. 120, 675 A.2d 1094 (1996). This argument is specious. Albeit there is no dispute that Perimeter was DaBronzo's direct employer and that RVI is "another employer with whom there is a business relationship", those facts cannot make RVI liable to plaintiff under CEPA. Employers other than direct employers are included in CEPA solely to make clear that employees who report allegedly illegal activities of these other employers are protected against retaliation by their direct employers. Certainly plaintiff can cite no precedent to the contrary. The one case relied on by plaintiff, *Barratt*, merely supports the proposition that CEPA protects employees against retaliatory discharges by their own employer, nothing more.

In *Barratt*, the plaintiff, a real estate broker employed by defendant, Cushman & Wakefield, was the exclusive leasing agent for Exchange Place Urban Renewal. *Id.* at 122, 675 A.2d 1094. Pursuant to CEPA, plaintiff brought a claim against his employer, Cushman & Wakefield, alleging that he was terminated in retaliation for disclosing to the Real Estate Commission that a partner in Exchange Place had prior convictions. *Id.* The issue presented was whether plaintiff could sue his own employer under CEPA for terminating him for reporting the illegal act of a partner in a partnership that had a business relationship with plaintiff's employer. In holding that plaintiff's direct employer, Cushman & Wakefield, could be liable under CEPA in those circumstances, the New Jersey Supreme Court stated "that a business relationship at the time of the disclosure can provide an incentive for the collusion that CEPA sought to discourage. A contrary holding would provide a disincentive for an employee to report an employer's illegal or unethical conduct. It would also contravene the Legislative purpose of discouraging collusion between employers." *Id.* at 130, 675 A.2d 1094. Ac-

cordingly, plaintiff was allowed to proceed with the CEPA claim *against his direct employer*; no action was brought or permitted against the other business entity.

Although CEPA was amended to protect against retaliation when an employee "blows the whistle" on "another employer" with whom the employee's employer has a business relationship, this amendment renders only the employee's direct employer liable. The amendment does not cast liability upon the other employer with whom the employees' employer has a business relationship. This principle is clearly illustrated by *Barratt*. In the case at bar, plaintiff is alleging collusion between Perimeter and RVI. Plaintiff believes that RVI directed Perimeter to fire him and that Perimeter complied because it feared losing the contract with RVI. Even if this were true, RVI cannot be liable under CEPA, although, Perimeter could be liable if it terminated plaintiff for "blowing the whistle" on "another employer with whom [Perimeter] had a business relationship". As a matter of policy, absent legislation expressly extending liability to the other business entity, liability must be limited to the direct employer who ultimately controls plaintiff's terms of employment, including termination. Consequently, this 1989 amendment to CEPA does not render RVI liable to Plaintiff.

### III. Plaintiff's Relationship With RVI Was That Of An Independent Contractor.

Having determined that independent contractors are not covered by CEPA and that the term "another employer" does not render RVI liable, I must decide whether plaintiff can be deemed an employee of RVI. Whether an individual is an employee or an independent contractor is a question of law to be determined by the court in the absence of a disputed issue of

material fact. *Metropolitan Pilots Association, L.L.C., v. Schlosberg,* 151 F.Supp.2d 511 (D.N.J.2001); *see also Cox v. Master Lock, Co.,* 815 F.Supp. 844, 845 (E.D.Pa. 1993). There are several tests in the employment law context that address whether an individual is an employee or an independent contractor. RVI suggests that the test discussed in *Pukowsky,* 312 N.J.Super. 171, 711 A.2d 398, is the appropriate analysis for this case. *See also Zippo, Mfg.,* 713 F.2d 32; *Franz v. Raymond Eisenhardt & Sons, Inc.,* 732 F.Supp. 521 (D.N.J.1990). Plaintiff has not objected to the use of this test. Indeed, the *Pukowsky* factors [11] largely encompass the factors enunciated in most settings. Twelve factors underlie the inquiry:

> (1) the employer's right to control means and manner of employee's performance; (2) the kind of occupation, supervised or unsupervised; (3) skill; (4) who furnishes equipment and workplace; (5) the length of time individual has worked for the company employer; (6) the method of payment; (7) manner of termination of the work relationship; (8) does the individual accrue annual leave; (9) is the work the individual performs an integral part of the "employer's" business; (10) does the individual accrue

retirement benefits; (11) does the "employer" pay social security taxes; and (12) the intention of the parties.

*Pukowsky,* 312 N.J.Super. at 182–183, 711 A.2d 398, *citing Franz,* 732 F.Supp. at 528.

The employer's right to control the "means and manner" of the employee's performance is generally agreed to be one of the most probative factors. *See Metropolitan Pilots Association, L.L.C.* 151 F.Supp.2d at 519 (*citing Eisenberg v. Advance Relocation & Storage,* 237 F.3d 111, 115 (2d Cir.2000)). Here, plaintiff asserts that RVI retained the right to, and did in fact, control his employment. He alleges that RVI's work orders specified the manner in which asbestos was to be removed from the plant, and that plaintiff had to secure RVI's approval before commencing any work. Plaintiff cites to contract provisions which are not in dispute to support his argument that RVI controlled the means and manner of employment and supervised his work:

> (1) all work was done "in accordance with written Maintenance Work Order Requests issued by RVI" (Exhibit D, deposition transcript of Robert Pursell at 22:8–10); (2)all work was done in accordance with the budget and schedule set on the maintenance orders by RVI (Exhibit D, deposition transcript of

---

**11.** The *Pukowsky* factors refer to the hybrid test enunciated by the Third Circuit in *Zippo.* 713 F.2d 32. The factors encompass several tests commonly used in the employment arena which differentiate an independent contractor from an employee. These include the "right to control" test, the "economic realities" test, which is similar to the "relative nature of the work test" in New Jersey, and the common law agency test enunciated in *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). The "right to control" test evaluates the amount of an employer's control exercised over an individual's work performance. "[T]he actual exercise of control is not as determinative as the right of control

itself". *Pollack v. Pino's Formal Wear & Tailoring,* 253 N.J.Super. 397, 408, 601 A.2d 1190 (App.Div.1992)(*citing Mahoney v. Nitroform Co.,* 20 N.J. 499, 506, 120 A.2d 454 (1956)). The "relative nature of the work" test is similar to the "economic realities" test, both of which assess the degree of a worker's financial dependence upon his employer and whether there is a "functional integration" of their operations. *See Caicco v. Toto Brothers, Inc.,* 62 N.J. 305, 310, 301 A.2d 143 (1973). There are numerous other tests discussed by the state and federal courts in New Jersey. However, the *Pukowsky* factors incorporate most or all of the factors included in the various tests and, therefore, I will utilize these factors as suggested by the parties.

Robert Pursell at 30:4–14); (3) all submittals, dimensions and contigous work was done with the approval of RVI (Exhibit D at 32:7–33:12); and (4) RVI had a right to require Perimeter representatives to attend meetings. (Exhibit D at 25:11–14; 35:13–20).

RVI also mandated compliance with its standard operating procedures and oversaw plaintiff's completion of his work. Based upon these facts, the Court finds that there were some indicia of control or supervision by RVI, but that this supervision was limited to ensuring compliance with safety procedures, promoting efficiency, managing its budget, establishing administrative processes, and maintaining control over its premises. (Factor 1). In addition, it is not disputed that DaBronzo independently exercised his expertise in removing and handling asbestos, albeit within the bounds of safety procedures required by RVI. (Factors 1 and 2). Thus, on balance, the first factor does not weigh in favor of either party.

Clearly, the removal of asbestos requires a specialized skill which was not possessed by RVI employees, and thus caused RVI to seek Perimeter's and plaintiff's services. (Factor 3). Moreover, this unique skill is unrelated to, and not an integral part of, the vitamin business of RVI. (Factor 9). Additionally, Perimeter provided the labor and the equipment for each job. The contract with RVI specified "[o]n a cost fixed fee basis, CONTRACTOR shall provide all supervision, labor, equipment, and materials required to complete construction, repair, installation, and maintenance projects (the "Services") in connection with the Belvidere, NJ facility of RVI in accordance with written Maintenance Work Order Requests issued by RVI …". Plaintiff's Opposition Brief, Ex-

hibit B ¶ 2.1(a). (Factor 4). DaBronzo, as foreman, supervised the work of other Perimeter employees performing under the work orders. (Factor 2).

Conversely, DaBronzo's longevity at the RVI site militates in favor of plaintiff's position. Plaintiff had worked at the RVI site for approximately thirty (30) years. During this time he was employed by Woolsulate for 24 years and by Perimeter for the remaining years. (Factor 5).

As to the factors which focus on the method of payment and the accrual of annual leave, there is no dispute that Perimeter was responsible for the administration of plaintiff's employment. Indeed, the contract between the parties provides for such. "CONTRACTOR is responsible for staffing the Services and providing any and all compensation and/or insurance to its staff members. *Id.* at ¶ 18.1(a); *see also* Declaration of Robert Pursell at ¶ 4 ("RVI does not pay Perimeter's employees and does not issue W2s, 1099s or other forms relating to wage or other payments to Perimeter's employees"). (Factors 6 and 8).

According to the contract, RVI had the right to direct Perimeter to remove any employee from its facility. "RVI has the right, at its sole discretion, to require CONTRACTOR to immediately remove any employee, subcontractor, supplier, or agent of CONTRACTOR employed at RVI's premises whom RVI deems incompetent or a hindrance to the proper progress of the work, and such person shall not again be employed on RVI's premises without the prior written consent of RVI". *Id.* at ¶ 11.12. RVI has exercised its right to remove independent contractors from its work sites approximately six (6) times [12]

---

12. *See* Plaintiff's Opposition Brief, Exhibit D, deposition transcript of Robert Pursell, ¶ 38.

Furthermore, it is not known whether the removal of these individuals from other RVI

, although it has never before removed an independent contractor from the Belvidere, New Jersey manufacturing plant. Notably, the contract speaks only to RVI's right to remove an employee from the work site and does not empower RVI to make termination decisions for Perimeter. Perimeter retained the ultimate authority to terminate plaintiff from its company's employ. Plaintiff has submitted no evidence that Perimeter could not have employed him at another work site or in another capacity. Thus, the decision to terminate DaBronzo, rather than simply remove him from RVI's site, rested solely with Perimeter. (Factor 7).

Importantly, the contract between RVI and Perimeter provides that Perimeter is responsible for plaintiff's retirement benefits and the payment of Social Security taxes. There is also no dispute between the parties that Perimeter did satisfy these obligations. (Factors 10 and 11). In addition, RVI had no control over plaintiff's vacation schedule or pension, and he was not eligible to subscribe to any employee benefit packages offer by RVI. *See id.* at ¶ 18.1 (a).

Finally, according to the contract, it was the stated intention of the parties to classify Perimeter and its employees as independent contractors. "Neither CONTRACTOR nor its subcontractors nor the employees of either, shall be deemed to be the servants, employees, or agents of [RVI]. CONTRACTOR understands and agrees that, for purposes of this AGREEMENT, CONTRACTOR and any employee (s) or other individual (s) designated by CONTRACTOR to perform Services under this Agreement ("staff members") are acting in the capacity of independent contractors". *See id.* (Factor 12).

Based upon the undisputed facts, balancing all of the factors of the *Pukowsky* test, and viewing the evidence in the light most favorable to plaintiff, this Court finds as a matter of law that plaintiff was an independent contractor and not an employee of RVI. Therefore, as an independent contractor, plaintiff cannot sustain a claim against RVI pursuant to CEPA.

## IV. Conclusion

Having determined that plaintiff was an independent contractor of RVI, and that the New Jersey CEPA does not extend its protections to independent contractors, summary judgment is granted in favor of RVI.

## ORDER

This matter having been opened to the Court by John A. Ridley, Esq., counsel for defendant, Roche Vitamins Inc., seeking summary judgment, pursuant to *Fed. R.Civ.P.* 56, against plaintiff Thomas DaBronzo, and the Court having reviewed the moving, opposition, and reply papers, and having heard oral argument on September 20, 2002, and further having entered an Opinion on this date setting forth the Court's decision in this matter, and for good cause shown,

IT IS on this 17th day of October, 2002,

ORDERED that defendants' motion for summary judgment is hereby granted.

---

sites resulted in their termination by their direct employers.