OPINION OF THE COURT
AMBRO, Circuit Judge
Steven J. Trzaska was an in-house patent attorney for L’Oréal USA, Inc. (“L’Oréal USA”), a cosmetics company. It fired him, he alleges, for his refusal to violate various ethical- rules that govern the legal profession. He asserts that this action violated New Jersey employment law, as one cannot be fired for refusing to violate regulations or public policy at the instruction of his employer. The District Court dismissed Trzaska’s claim without discovery. Because his allegations against the beauty-products corporation appear to be more than skin-deep, they plausibly pass muster at the motion-to-dismiss stage. Thus we reverse.
I. BACKGROUND
Beginning in 2004, Trzaska was employed as the head of L’Oréal USA’s regional patent team in Clark, New Jersey, overseeing the process by which the latter would patent the company’s newly developed products and inventions. The process would begin when an inventor submitted to the patent team an “invention disclosure” for a new product describing its potentially patentable subject matter. A patent attorney on the team then vetted the invention disclosure to determine the product’s pat-entability by interviewing the inventor and searching L’Oréal USA’s internal database to confirm that the subject matter of the product did not already exist. If the patent team determined that the product was patentable, an attorney prepared the necessary paperwork and submitted a patent application to the United States Patent and Trademark Office (“USPTO”).
As with any legal practitioner, the attorneys on L’Oréal USA’s patent team were required to follow various ethical standards known as Rules of Professional Conduct that guide and regulate the legal profession. Because he was admitted to practice law in Pennsylvania and before the USPTO, both the Rules of Professional conduct established by the Supreme Court of Pennsylvania and the professional rules promulgated by the USPTO (collectively, the “RPCs”) governed Trzaska’s conduct. In relevant part, these RPCs barred attorneys from filing frivolous or bad-faith patent applications or from *158 knowingly making false statements before a tribunal.[1] Violations of the RPCs could result in sanctions or disbarment.
L’Oréal, S.A.—the French parent company of L’Oréal USA (collectively, “L’Oréal”)—established a global quota of patent applications that each regional office must file each year. In 2014, the annual quota for Trzaska’s team was 40 patent applications. Management officials at L’Oréal told Trzaska and his team members that, if they failed to meet that quota, “there would be consequences which would negatively impact their careers and/or continued employment.” J.A. at 32. At the same time, L’Oréal adopted an initiative to improve the quality of patent applications it filed with the USPTO. Adopting this company policy resulted in fewer invention disclosures submitted to the patent team for vetting.
With two competing company policies in place—one that required the patent team to meet an annual minimum of patent applications and one that effectively reduced the 'amount of invention disclosures that could be evaluated—Trzaska’s team found itself in a predicament. According to several members of the team, there were very few patentable products submitted to it for vetting while L’Oréal continued to demand that the team meet the annual quota. Consequently, the patent team did not believe it was able to meet the mandatory quota for 2014 without filing patent applications for products that it did not in good faith believe were patentable. And, as L’Oréal had threatened, if the team did not meet that quota, the patent attorneys’ job security would be in peril.
In the hope of resolving this professional Catch-22, Trzaska approached his superiors. He explained that neither he nor his team would be willing to file any patent applications for products that they in good faith believed were not patentable. He advised management that if any attorney on the patent team filed such a patent application, he or she would be in violation of the ethical standards—or RPCs—to which they were bound as licensed patent attorneys. Though Trzaska did not identify any offending patent application that he nonetheless was instructed to file, he informed his superiors that he would not do so should he come across one, even if that meant that the annual quota would not be met.
Apparently L’Oréal did not receive well Trzaska’s protest. In the weeks following Trzaska’s meeting with management, L’Oréal offered him two severance packages that he could accept so long as he left the company. If he chose not to leave, he was instructed to “go back to [his] office and get back to work.” J.A. at 34. After he rejected both severance packages offered, L’Oréal fired Trzaska, stating that his position was no longer needed.
Trzaska brought suit in District Court against both L’Oréal entities for wrongful *159 retaliatory discharge in violation of the New Jersey Conscientious Employee Protection Act (“CEPA”), N.J. Stat. Ann. § 84:19-1 et seq. Among other things, CEPA protects an employee from retaliatory termination following his disclosure of the employer’s violation of law or his refusal to participate in illegal activity at the request of the employer, including a practice that the employee believes contravenes public policy. Trzaska alleged he was fired because he refused to participate in an illegal activity by filing frivolous or bad-faith patent applications that would violate the RPCs and his ethical obligations as a licensed patent attorney.
The District Court dismissed Trzaska’s claims under Federal Rule of Civil Procedure 12(b)(6) because in its view the RPCs were an inadequate basis to maintain his CEPA claim. It reasoned that, because the RPCs do not govern any activities, ethical obligations, or business decisions of the L’Oréal entities, they did not violate any law on which a CEPA claim could be based. It further determined that Trzaska failed to show he had a reasonable belief that L’Oréal had violated a law or that a violation was imminent (which it deemed a necessary element for a CEPA claim). (Interestingly, the Court also dismissed Trzaska’s claims against L’Oréal, S.A. for the same reasons even though it only sought a Rule 12(b)(5) dismissal for insufficient service of process.) This appeal followed.
II. JURISDICTION AND STANDARD OF REVIEW
We have jurisdiction over final orders of the District Court per 28 U.S.C. § 1291. We review de novo a district court’s dismissal of a complaint under Rule 12(b)(6) for failure to state a claim. Chavarriaga v. N.J. Dep’t of Corr., 806 F.3d 210, 218 (3d Cir. 2015). When conducting our review, “we must accept the allegations in the complaint as true ... [but] are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.” Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013) (quotations omitted).
III. ANALYSIS
A. RPCs and CEPA Violations
“CEPA ... protects] employees from retaliatory actions by employers .... ” Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 91 (3d Cir. 1999) (quotations omitted). To that end, courts construe it flexibly. Id. It provides in relevant part:
An employer shall not take any retaliatory action against an employee because the employee does any of the following:
[[Image here]]
(c) Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law ...; (2) is fraudulent or criminal ...; or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.
N.J. Stat. Ann. § 34:19-3(e).[2] Accordingly, a plaintiff must identify a law, rule, regula *160 tion, or clear mandate of public policy, that supports the basis of his CEPA claim as well as “unacceptable practices in the defendant employer’s business” that contravene the identified authority. Hitesman v. Bridgeway, Inc., 218 N.J. 8, 93 A.3d 306, 321 (2014).[3]
Following these guidelines, an allegation that an employer instructed, coerced, or threatened its patent attorney employee to disregard the RPCs binding him violates a clear mandate of public policy within the meaning of CEPA. See N.J. Stat. Ann. § 34:19-3(c). Terminating that employee for refusing to follow such an instruction or its equivalent triggers CEPA protection for two reasons.
First, “[a] patent by its very nature is affected with a public interest.” Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 343, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (quotations omitted). It “favors the maintenance of a well-functioning patent system.” Medtronic, Inc. v. Mirowski Family Ventures, LLC, — U.S. —, 134 S.Ct. 843, 851, 187 L.Ed.2d 703 (2014); see also King Drug Co. of Florence, Inc. v. Smithkline Beecham Corp., 791 F.3d 388, 394 (3d. Cir. 2015) (“A patent, consequently, is a special privilege designed to serve the public....” (quotations omitted)). Accordingly, “the relationship of attorneys to the Patent Office requires the highest degree of candor and good faith,” Kingsland v. Dorsey, 338 U.S. 318, 319, 70 S.Ct. 123, 94 L.Ed. 123 (1949) (quotations omitted), which includes adherence to the USPTO’s RPCs and regulations governing the submission of good-faith, non-frivolous patent applications. A well-functioning pát-ent system cannot exist without it. An employer’s directive to its employees to disregard these RPCs thus crosses a clear mandate of public policy. Moreover, while the USPTO’s RPCs fall within CEPA’s public policy provision, N.J. Stat. Ann. § 34:19-3(c)(3), they also are codified federal regulations, implicating N.J. Stat. Ann. § 34:19-3(c)(l) as well. See, e.g., 37 C.F.R. §§ 11.301, 11.303(a)(1).
Second, rules of professional conduct in general can underlay a CEPA violation. “In New Jersey, [the courts] are deeply committed to the principle that an employer’s right to discharge an employee carries a correlative duty to protect his freedom to decline to perform an act that would constitute a violation of a clear mandate of public policy.” Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 650 A.2d 958, 971 (1994) (quotations omitted). To stymie that duty finds the employer afoul of CEPA. See Parker v. M&T Chemicals, Inc., 236 N.J.Super. 451, 566 A.2d 215, 219-20 (N.J. Super. Ct. App. Div. 1989) (in-house patent counsel’s adherence to a state Supreme Court’s ethical Rules of *161 Professional Conduct constitutes a clear mandate of public policy that CEPA protects); see also Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 672 A.2d 1182, 1144 (1996) (holding generally, in the arbitration context, that New Jersey “precedents demonstrate quite clearly that the Rules of Professional Conduct ... express a clear mandate of public policy”); Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 417 A.2d 505, 512 (1980) (in a case giving rise to the passage of CEPA, the New Jersey Supreme Court determined that non-administrative Rules of Professional Conduct may contain expressions of public policy, and a request to violate them serves as a basis for wrongful termination). An employee cannot be terminated for refusing to violate or disregard ethical standards regulating his profession, as public policy in New Jersey requires that he follow them.
Given these two principles—that the abuse of the patent application system and the violation of Rules of Professional Conduct harm the public’s interest—an employer’s policy effecting the disregard of the RPCs contravenes clear mandates of public policy within the meaning of CEPA. Thus an allegation that an employer promulgates such a policy serves as an adequate basis to bring a CEPA claim. See Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 961 A.2d 1167, 1182-83 (2008) (CEPA requires “an expression by the employee of a disagreement with a corporate policy, directive, or decision based on a clear mandate of public policy,” and in those contexts the “termination [itself] violates a public policy mandate.”)
The District Court determined that the applicable RPCs could not serve as a basis for a CEPA violation because they do not regulate L’Oréal’s business practices. That conclusion may be correct, but the basis of the CEPA claim here is not L’Oréal’s violation of the RPCs; rather, it is the instruction to its employees that would result in the disregard of their RPC duties and hence violates a mandate of public policy. CEPA is clear: an employee cannot be terminated for refusing to participate in conduct that he reasonably believes violates public policy. This is especially so because we must construe the statute’s protections liberally. See Blackburn, 179 F.3d at 90. Accordingly, the failure to follow instructions that effectively disregard RPCs forms a CEPA claim.
B. Trzaska’s Allegations
The District Court determined that, regardless whether an employer’s instruction to an employee that would result in the disregard of the employee’s professional ethical standards can be the basis of a CEPA claim, Trzaska failed to plead adequately such a claim. It found that Trzaska did not allege that L’Oréal had violated a law or public policy or that such a violation was imminent. His apparent failure to do so, the Court believed, was fatal to his CEPA claim. We disagree.
First, as stated above, professional ethical codes can serve as a basis to state a claim under CEPA when an employee is coerced to disregard them. In New Jersey
the sensible meaning of CEPA is that the objecting employee must have an objectively reasonable belief, at the time of objection or refusal to participate in the employer’s offensive activity, that such activity is ... incompatible with a constitutional, statutory or regulatory provision, code Of ethics, or other recognized source of public policy. Specific knowledge of the precise source of public policy is not required.
Mehlman v. Mobil Oil Corp., 153 N.J. 163, 707 A.2d 1000, 1015 (1998). Trzaska’s allegations thereby come within the scope of CEPA protection, especially in light of the *162 liberal construction afforded the statute. See Blackburn, 179 F.3d at 90.
Second, we disagree with the District Court that Trzaska’s CEPA claim should be brushed away because his “pleadings contain no evidence that [L’Oréal] demanded or ordered that [he] or others relinquish their professional judgments or obligations.” Trzaska v. L’Oréal USA, Inc. et al., Civil Action No. 2:15-cv-02713-SDW-SCM, 2015 WL 6687661, at *5 (D.N.J. Oct. 30, 2015). That statement misapplies the standard of review at the motion-to-dismiss stage. There a court must consider no more than whether the complaint establishes “enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements” of the cause of action. Connelly v. Lane Constr. Corp., 809 F.3d 780, 789 (3d Cir. 2016) (quoting Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quotation and alteration omitted)). A plaintiffs allegations must be accepted as true and construed in the light most favorable to him when determining if his complaint should be dismissed. Phillips, 515 F.3d at 231 (quotations omitted).
Trzaska’s complaint has met this threshold. It alleges there was a company policy of meeting the patent application quota regardless whether the applications submitted were for products that he did not believe were patentable. He also claimed that he and other colleagues were implicitly instructed to disregard the RPCs in order to meet the quota and that his supervisors expressly rejected his concern about violating the RPCs. And, to close the circle, L’Oréal threatened to terminate his employment if he did not meet the quota. J.A. at 32, 35-36. If these allegations are taken as true, which they must be for the purposes of deciding a motion to dismiss, Trzaska has alleged a colorable violation of CEPA. Whether he was in fact instructed to violate the RPCs is determined later in the litigation process.[4]
*163 Trzaska’s amended complaint makes allegations that are hardly cosmetic. Hence he has sufficiently pled a CEPA claim, and that claim should not be dismissed at this stage in the litigation.
C. L’Oréal, S.A.’s Motion to Dismiss
L’Oréal, S.A. filed a motion to dismiss Trzaska’s appeal as to it because Trzaska did not initially file a notice of appeal as required by Federal Rule of Appellate Procedure 3(c)(1)(B). Specifically, L’Oréal USA and L’Oréal, S.A. are two separate defendants, they have separate counsel, and they each filed separate motions to dismiss Trzaska’s complaint on different grounds. The District Court dismissed the complaint against L’Oréal USA for the reasons stated above and, in a companion order issued the same day, denied as moot L’Oréal, S.A.’s motion to dismiss for improper service and instead dismissed Trzaska’s complaint against it for the same reasons the Court gave in dismissing the complaint against L’Oréal USA. Trzaska only attached to his notice of appeal the order that dismissed his complaint as to L’Oréal USA.
A notice of appeal must specify the “judgment, order, or part thereof being appealed.” Fed. R. App. P. 3(c)(1)(B). However, “[t]his court will exercise appellate jurisdiction over orders that are not specified in the notice of appeal where: (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues.” Polonski v. Trump Taj Mahal Assocs., 137 F.3d 139, 144 (3d. Cir. 1998) (citations omitted). In this vein, “our jurisprudence liberally construes notices of appeal.” Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 184 (3d Cir. 2010) (quotations omitted).
The Polonski factors point to our jurisdiction. No doubt there is a connection between the specified and unspecified orders; they were issued the same day and relied exclusively on the same opinion. Given that Trzaska sought appellate review of that opinion, it is easy to infer his intention to appeal both orders that relied on it in dismissing his entire . complaint against both defendants. Finally, L’Oréal, S.A. has failed to demonstrate how it has been prejudiced and has not had a full opportunity to brief the issues. The Clerk of Court sent notice of the appeal to L’Oréal, S.A.’s counsel shortly after it was filed requesting that he enter his appearance. L’Oréal, S.A. then waited five months to file its motion to dismiss the appeal. Most importantly, L’Oréal, S.A. has had a full opportunity to brief the issues, which it has done. Therefore, because of the connection between the orders, Trzaska’s inferred intent to appeal both of them, and the lack of prejudice to L’Oréal, S.A., we deny L’Oréal, S.A.’s motion to dismiss the appeal.
IV. CONCLUSION
An instruction, coercion, or threat by an employer that would result in the disregard of obligatory ethical standards of one’s profession violates a clear mandate of public policy within the meaning of CEPA. Under it, an employee cannot be terminated for refusing to engage in conduct in which he or she is prohibited from engaging. We therefore reverse the District Court’s dismissal and remand the case for further proceedings without dismissing Trzaska’s appeal as to L’Oréal, S.A.

. In relevant part, the RPCs of the USPTO provide:
A practitioner shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law[;]
and
A practitioner shall not knowingly ... [m]ake a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the practitioner....
37 C.F.R. §§ 11.301, 11.303(a)(1) (2013). Trzaska also asserts that 37 C.F.R. §§ 11.18, 11.113, 11.201, and 11.804 are relevant, as they relate to other pertinent forms of attorney misconduct. Parallel provisions appear in Rules 1.13, 3.1, 3.3, and 8.4 of the Pennsylvania RPCs. See 204 Pa. Code § 81.4.

. Trzaska insists that N.J. Stat. Ann. § 34:19-3(a) also applies to his claims because the RPCs imposed ethical duties on "L’Oréal [that it] owed to the PTO.” Br. for Appellant at 40. That section protects an employee from retaliatory discharge following the. employee’s whistleblowing of his employer’s illegal conduct. Despite Trzaska's argument, we agree with the District Court that the RPCs—which regulate attorney conduct—do not govern the business activity of non-legal practitioners such as L’Oréal. Under Trzaska’s theory, *160 there is no violation of that CEPA provision. However, as discussed below, L’Oréal’s alleged instruction to disregard the RPCs constitutes a CEPA violation under N.J. Stat. Ann. § 34:19-3(c) (refusal to participate in illegal activity). It is possible, therefore, that this violation of subsection (c) could be bootstrapped as a violation of subsection (a) ("disclos[ing] ... to a supervisor ... an activity, policy, or practice of the employer” that "is in violation of the law”). Trzaska has made no such allegation, however, and thus we need not address this hypothetical argument.

. Our dissenting colleague believes that "a cause of action under CEPA is stated only when illegal activity is occurring or imminent.” Dissent at 166. We disagree, as "when a plaintiff brings an action pursuant to [CEPA], the trial court must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct.... [A] plaintiff [need not] allege facts that, if true, actually would violate that statute, rule, or public policy.” Dzwonar v. McDevitt, 177 N.J. 451, 828 A.2d 893, 901 (2003). Regardless, as discussed below, Trzaska has alleged conduct that contravenes public policy.

. Our dissenting colleague does not refute that these allegations have been pled in Trzas-ka’s first amended complaint; rather, he thinks those factual allegations are insufficient to state a claim. We again part ways. First, the dissent describes these allegations as "conclusory.” Dissent at 166, 167-68. We think that characterization mistakenly blurs the distinction between factual allegations— which we must accept as true—with conclu-sory legal assertions—which we can reject. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Second, Trzaska has pled that he and his colleagues were instructed to meet the quota "or else," and that management ignored his concerns, about violating his ethical duties. Given the facts provided in his complaint, Trzaska has alleged he had a reasonable belief that his employer was either instructing or coercing him to disregard the RPCs, which—as the dissent agrees—is a violation of public policy sufficient to serve as the basis of a CEPA claim. That reasonable belief is all that is required at the pleading stage. Dzwonar, 828 A.2d at 900-02. The heightened standard that the dissent would have us impose is inappropriate when considering a motion to dismiss.
On this point, the dissent believes that we should hold Trzaska to a higher standard because he is an attorney. Dissent at 167-68. It cites to Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 961 A.2d 1167 (2008), for this assertion. Tartaglia dealt with a claim brought under Pierce v. Ortho Pharmaceutical Corporation, 84 N.J. 58, 417 A.2d 505 (1980), which created the common-law antecedent to CEPA. In Tartaglia, the plaintiff sought relief from wrongful termination following whistleblow-ing of her employer’s own ethical violations. The New Jersey Supreme Court determined that the plaintiff, an attorney who internally complained about her employer’s RPC violation, was held to a "higher standard” of demonstrating an actual RPC violation occurred (as opposed to a reasonable belief that one occurred) because, as an attorney, she was more knowledgeable about the RPCs and under them was obligated to report another’s violation. Tartaglia, 961 A.2d at 1184-85. That case does not apply to what is before us: it dealt with an attorney-employer’s own RPC violations (ours does not); a Pierce whistle- *163 blowing claim regarding that violation (ours does not); and a claim that has a statutory corollary in N.J. Stat. Ann. § 34:19-3(a) (which we have noted above Trzaska has not sufficiently pled as stated in his complaint, as opposed to his claims under § 34:19-3(c)).