**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3270
_____

DARRYL ABRAMOWITZ,

Appellant

v.

TROPICANA ATLANTIC CITY CORP.,
d/b/a TROPICANA CASINO AND RESORT;
MARINA DISTRICT DEVELOPMENT COMPANY, LLC,
d/b/a BORGATA HOTEL CASINO AND SPA
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-15-cv-01694)
Magistrate Judge: Honorable Joel Schneider
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on July 9, 2018

Before: GREENAWAY, JR., RESTREPO, and BIBAS, *Circuit Judges*

(Filed: September 20, 2018)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

BIBAS, *Circuit Judge*.

Though the adage "the house always wins" is not invariably true, it holds true in this case. Darryl Abramowitz got great deals from the Tropicana and Borgata casinos. Seeking his patronage, they offered him gambling perks for specific weekends. He rejected Tropicana's offer, but then tried to cash it in four months later. And he took what Borgata offered him, but still thought it had cheated him. So he sued, alleging an unlawful bait-and-switch scheme. The District Court granted summary judgment for both casinos.

We will affirm. Abramowitz got what he bargained for, and there is no evidence that the casinos misrepresented their offers.

## I.

Darryl Abramowitz describes himself as a "high roller"—a gambler who bets lots of money. High rollers can be quite profitable for casinos, so casinos offer incentives to attract them. These incentives include match-play coupons, which can be used to double one's bet, and "comps" (short for complimentary), which are free goods, services, or amenities. During 2012, marketing representatives from Tropicana and Borgata emailed Abramowitz and offered him coupons and comps if he visited their casinos.

### A. Tropicana

In March 2012, a Tropicana marketing representative invited Abramowitz to a blackjack tournament at the end of that month. After some negotiating, Tropicana's representative agreed to his requests in mid-March:

I was going to meet you half way offering you 20k [match play] but I thought if I'm going that far, it just makes sense just to give you what you asked for.

| | |
|---|---|
| Room: | 3/31-4/1 Penthouse Suite butler Service |
| RMS: | 3/31 Eta? let me know what you want the butlers to put in your room |
| Event: | 3/31 9pm 50k Winner-Take-All BJ Tourn 49ppl max Rook Top Lounge. Finals immediately following |
| Other: | 3/31 25K Match Play – what denomination so they can have it ready for you? |
| Dinner? | Fin, Il Verdi, Golden Dynasty, The Palm, Carmines, Red Square, PF Changs, Cuba Libre… |
| Credit: | Inactive – Is your bank still TD ? |

App. 340 (some formatting tabs added). But when the representative emailed Abramowitz a week later to confirm his attendance, he replied that he would not make it.

In June 2012, Abramowitz received a mass email from the same representative:

6/23 Shopping Spree where you can get an Ipad or other
items of your choosing
AND
The following weekend compete in our
**$50k winner-take-all BLACKJACK TOURNAMENT** 49PPL
maximum!
MATCH PLAY OR SHOPPING AS WELL - YOU DECIDE.
**RSVP REQUIRED**

App. 350. The email included a disclaimer: "Comps are based on play. Play required for future events. Must be 21. May change or cancel at anytime." *Id.* Two days before that tournament, the representative emailed Abramowitz individually, and he replied: "yes put me in." App. 352. But no one mentioned specific incentives.

Abramowitz attended Tropicana's June 30 tournament, though he stayed at a different casino's hotel. He played in the tournament but "didn't do well." App. 143. Yet he did not have to buy into the tournament and lost no money.

3

After the tournament, Abramowitz went to Tropicana's credit department to get match-play coupons. The cashier had $10,000 in coupons for him, but Abramowitz thought there should have been $25,000 in coupons. At first, he took the coupons, but he was "really angry." App. 143. So he returned them and told the cashier: "Your hotel is no good. You guys are cheats and I'm getting the h*** out of [ ]here." *Id.* Then he called the marketing representative and left her a message.

Abramowitz's testimony conflicts with that of the marketing representative. But, according to Abramowitz, she called him back. He says he called her "a liar" and "a cheat" and cursed at her for not having $25,000 in match-play coupons for him. App. 146. According to him, she replied, "I do have 25 for you" but could not get it to him that evening. *Id.* She, on the other hand, testified that there were no calls about the coupons.

## B. Borgata

On Thursday, March 22, 2012, a Borgata marketing representative emailed Abramowitz this confirmation for an upcoming stay:

> Hi Darryl,
>
> All set at Water Club for this Fri and Sat (Penthouse w/butler).[ ] Credit is finalizing your line for $250k now (just stop by our credit office to sign slip before playing).[ ] Regarding shopping, I'll comp you $5k thru the door at any of our store(s), and more by trips end.
>
> Thanks, and I look forward to seeing you.

App. 108. At Abramowitz's request, the representative sweetened the pot, adding a $500 comp at one of Borgata's restaurants and sending a limousine to drive him the 153 miles to Atlantic City.

After arriving by limousine and checking in, Abramowitz stopped by Borgata's credit office and asked "if they had anything for [him]." App. 156. They did not. So he called the representative to ask: "Where do I go pick up my 5,000?" *Id.* According to Abramowitz, the representative told him: "I'm not on [the] property, and I'll be there tomorrow. I will see you tomorrow and I'll take care of you then." *Id.*

Abramowitz then started gambling. He played blackjack for about two hours and won $105,000. After sleeping for a few hours, he called the representative again to ask: "Where do I go pick up my 5,000?" App. 156. After some back-and-forth, the representative told him that Borgata did not give cash and that he should charge his shopping to his room. Abramowitz bought some clothes and had dinner, charging those bills to his room. The next morning, he gambled some more and won another $2,000 before taking another Borgata limousine home.

When Abramowitz got home, he "was furious [that he] didn't get the $5,000 [he] was promised." App. 157. So Abramowitz emailed the representative and asked the representative to send him a computer, a laptop, and two clock radios (totaling $3,790) from one of Borgata's electronics stores.

It does not appear that Abramowitz ever got those electronics. But in the end, apart from a $10 difference between his charges and credits, he never paid for anything at Borgata that weekend. And he received $5,874.12 worth of comped goods and services that weekend—including his limousine rides, hotel room, dinner, and clothing purchases. But he was not satisfied. He wanted the $5,000.

### C. Procedural history

Abramowitz sued Tropicana and Borgata in New York state court, alleging an unlawful bait-and-switch scheme. The casinos removed the case to federal court and had it transferred to the District of New Jersey. After discovery, the District Court granted summary judgment for the casinos. *See Abramowitz v. Tropicana Atl. City Corp.*, Civ. No. 15-1694, 2017 WL 1041162, at *9 (Mar. 17, 2017); App. 36. It later denied Abramowitz's motion to reconsider. He now appeals.

## II.

Before reaching the merits, we must address the scope of Abramowitz's notice of appeal. A notice of appeal should "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). The notice of appeal here refers only to the order denying his motion to reconsider. But this appeal is really about the District Court's grant of summary judgment.

Still, we have jurisdiction to review orders omitted from a notice of appeal if "(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." *Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 163 (3d Cir. 2017) (internal quotation marks omitted); *see United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 108 n.1 (3d Cir. 2007) (reviewing grant of summary judgment not specified in notice of appeal through order denying reconsideration). All three requirements are met here. So we will review both orders.

6

The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We review the grant of summary judgment de novo. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). "Summary judgment is appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). We review the denial of reconsideration for abuse of discretion. *Id.*

## III.

Because the casinos never promised Abramowitz what he claims they did, summary judgment was proper.

### A. There was no misrepresentation or unlawful conduct

Abramowitz pleads the same basic theory three times, based on three sources of law. Each count alleges that the casinos misrepresented what they would give him. But, on the record before us, there is no genuine factual dispute about misrepresentation. So the District Court properly granted the casinos summary judgment on Abramowitz's two statutory and one common-law fraud claims.

The New Jersey Consumer Fraud Act requires proof of (1) a defendant's unlawful conduct, (2) a plaintiff's ascertainable loss, and (3) a causal relationship between the two. *Zaman v. Felton*, 98 A.3d 503, 516 (N.J. 2014) (internal quotation marks omitted) (interpreting N.J. Stat. Ann. § 56:8-2).

New York's General Business Law § 349 requires proof of a practice that (1) was "consumer-oriented," (2) was materially misleading, and (3) caused injury to the plaintiff. *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000).

7

And New Jersey common-law fraud requires proof that (1) the defendant made a material factual misrepresentation (2) knowing or believing that it was false and (3) intending that the plaintiff rely on the statement, and that (4) the plaintiff reasonably relied on that misrepresentation and, (5) as a result, suffered damages. *Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1247 (N.J. 2006).

Here, there is no evidence that either casino misrepresented anything. So all three claims fail.

As to Tropicana, Abramowitz argues that the mid-March email made a standing offer of $25,000 in match-play coupons. So, he contends, Tropicana misled him when it did not have those coupons waiting for him in June.

We assume without deciding that the failure to honor an offer can qualify as misrepresentation, deception, or unlawful conduct. Even if it can, the email's plain language belies Abramowitz's interpretation. Tropicana expressly made an offer for "*3/31* 25K Match Play." App. 340 (emphasis added). Nor do the Tropicana representative's deposition or recorded phone call show that the email was deceptive. They say only that she vaguely remembered that the coupons were waiting for Abramowitz and that she assumed that he would still qualify for $25,000 in coupons. But the question is whether Tropicana misrepresented the offer to him. The answer, on this record, is no.

As to Borgata, Abramowitz argues that it misled him because, when he arrived on March 24, it did not hand him $5,000 in cash. But Borgata did not promise that. Borgata's representative promised to "comp [him] $5k thru the door at any of our store(s)." App. 108.

8

Abramowitz admits that Borgata did comp his shopping and other charges that weekend. And he admits that he did not pay for anything that weekend. So Borgata did not misrepresent anything.

Abramowitz's fraud claims are a bust. There was no misrepresentation, so summary judgment was proper on all three claims.

**B. Borgata honored its contract; Abramowitz repudiated Tropicana's**

Abramowitz's breach-of-contract claims fare no better. As just noted, Borgata upheld its end of the bargain, comping Abramowitz's charges that weekend. So it did not breach.

As to Tropicana, Abramowitz's anticipatory repudiation bars his contract claim. A party to a contract is excused from performance if the other party, before performance is due, says he will not uphold his end of the bargain. *Gaglia v. Kirchner*, 721 A.2d 1028, 1031-32 (N.J. Super. Ct. App. Div. 1999); Restatement (Second) of Contracts §§ 250, 253(2) (1981) (anticipatory repudiation).

Even if there were a valid contract between Abramowitz and Tropicana, governed by the terms of the mid-March email, Abramowitz repudiated it by saying he would not make it that weekend. That absolved Tropicana of any future performance. *See id.* (both sources).

**C. No reason to reconsider**

Finally, we see no error in the District Court's denial of Abramowitz's motion to reconsider. He neither alleged an intervening change in law nor offered new evidence. His motion showed no "clear error of law" nor any "manifest injustice," but instead rehashed his earlier arguments. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). So the District Court properly denied his motion. *Id.*

9

* * * * *

The house wins. We will affirm.

* * * * *