NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2312
_____

IKB INTERNATIONAL S.A., In Liquidation;
IKB DEUTSCHE INDUSTRIEBANK AG,
                                    Appellants

v.

WILMINGTON TRUST COMPANY; M&T BANK CORP, as Successor by Merger to
the Wilmington Trust Company, as Trustee (and any predecessors or successors thereto);
CWABS TRUST 2005 HYB9; IMPAC SECURED ASSETS CORP MORTGAGE PASS
THROUGH CERTIFICATES SERIES 2004-3; IMPAC CMP TRUST SERIES 2004-5;
IMPAC CMB TRUST SERIES 2005-5; IMPAC CMB TRUST SERIES 2005-6; IMPAC
CMB TRUST SERIES 2005-8; RENAISSANCE HOME EQUITY LOAN TRUST 2005-
1; RENAISSANCE HOME EQUITY LOAN TRUST 2005-4; RENAISSANCE HOME
EQUITY LOAN TRUST 2006-1; RENAISSANCE HOME EQUITY LOAN TRUST
2006-2; RENAISSANCE HOME EQUITY LOAN TRUST 2006-3; RENAISSANCE
HOME EQUITY LOAN TRUST 2006-4; RENAISSANCE HOME EQUITY LOAN
TRUST 2007-1; RENAISSANCE HOME EQUITY LOAN TRUST 2007-2; SAXON
ASSET SECURITIES TRUST 2006-3
_____

On Appeal from the United States District Court
For the District of Delaware
(D.C. Civil No. 1-17-cv-01351)
District Judge: Honorable John E. Jones, III
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 5, 2019

Before: HARDIMAN, SCIRICA, and RENDELL, *Circuit Judges*

(Filed: May 21, 2019)

_____

OPINION[*]

_____

**SCIRICA**, *Circuit Judge*

This appeal involves a contract dispute arising from investments that proved calamitous. Plaintiff-Appellants IKB International S.A. and IKB International A.G. are European commercial banks that invested $168 million in residential mortgage-backed securities (RMBS) issued by securitization trusts organized under the Delaware Statutory Trust Act. These investments became worthless in the wake of widespread loan defaults. Plaintiffs sued Wilmington Trust Company (WTC), one of the trustees, to recoup their losses. The documents governing the trusts, however, define a limited role and circumscribed set of duties for WTC. While the Complaint details a bevy of abusive and negligent conduct by sellers, servicers, and managers that may have harmed Plaintiffs' investments, it fails to show that WTC breached any duties it owed under the contracts. We will affirm the trial court's dismissal of Plaintiffs' claims.

**I.**

**A.**

Plaintiffs sued under contracts governing their RMBS investments. The securitization process generally begins when the mortgage lender—the "Seller"—sells

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

loans in bulk to an investment bank—the "Sponsor," often an affiliate of the Seller. The Seller makes representations and warranties about the quality and characteristics of the underlying mortgages. To make these representations and warranties enforceable, the Sponsor gets access to the loan files at sale. The Sponsor then creates a trust. The trust pools the loans and issues RMBS notes. Investors, like Plaintiffs, that purchase the trust's notes have a right to the cash flow from mortgage payments on the underlying loans.

The fifteen RMBS trusts involved here were created by various financial institutions and organized under Delaware law. Plaintiff IKB S.A. bought thirty-two securities issued by these trusts between 2005 and 2007. It sold these securities to various buyers, including Plaintiff IKB A.G., well before this litigation began.

Each RMBS trust from which Plaintiffs purchased securities had two trustees, an "Indenture Trustee" and an "Owner Trustee." Defendant-Appellee WTC served as the Owner Trustee for each of the fifteen trusts. WTC, a Delaware corporation, helped the trusts comply with the requirement that all trusts organized under the Delaware Statutory Trust Act have at least one trustee that "has its principal place of business" in Delaware. 12 Del. C. § 3807(a). WTC's role as Owner Trustee was primarily ministerial, involving limited duties such as executing documents on behalf of the trusts and accepting service of legal process. In return for carrying out the Owner Trustee role, WTC collected a modest annual fee of $3,000 per trust.

The Indenture Trustees, by contrast, shouldered substantive responsibilities. Each trust appointed an Indenture Trustee to represent the investors' interest. The Indenture Trustee's responsibilities included monitoring performance, managing the collateral for

3

the investors' benefit, and enforcing the trusts' rights under the securitized loans. But many trust management functions were lawfully delegated to third parties.

The trusts were governed by a set of agreements, including: the Trust Agreement, the Indenture, and the Servicing Agreement (collectively, "Governing Agreements").[1] Plaintiffs assert WTC breached duties owed under the Trust Agreements and Indenture Agreements.

The Trust Agreement creates the trust, describes the trust's property (the mortgage loans), assigns authority and duties to the Owner Trustee, and provides for distribution to the certificate-holders. WTC is a party to the Trust Agreement, which is governed by Delaware law. Although the Trust Agreement does not assign responsibility for managing the mortgage loans, Plaintiffs point to Trust Agreement provisions outlining WTC's role and authority to "conduct the business of the Trust" to support their view that WTC owed contractual obligations to the investors. A1313 (Trust Agreement (TA) § 2.01).

The Indenture, which is governed by New York law, defines rights and responsibilities connected to the trust's securities. The Indenture refers to the trust as "Issuer," and it defines the Issuer's responsibilities to manage collateral loans. Under the Indenture, the Issuer may contract a third-party administrator to perform its duties. The

---

[1] Although the Governing Agreements vary slightly from trust to trust, we accept Plaintiffs' undisputed observation that for purposes of this appeal "[e]ach of the relevant contractual provisions is substantively similar in all of the Governing Agreements and imposes substantially similar duties and obligations on Wilmington Trust as Owner Trustee." A148 (Compl. ¶ 319).

Citations to the Governing Agreements refer mainly to the "sample provisions" in the Joint Appendix. Citations to the Joint Appendix are styled as "A" in this opinion.

Indenture assigns the Indenture Trustee fiduciary duties, including that to "use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs" in the event of default. A70 (Compl. ¶ 75) (quoting Indenture § 6.01 (emphasis removed)). WTC itself is not party to the Indenture. Instead, WTC executed the Indenture, as well as other contracts, on behalf of the trust.

**B.**

Plaintiffs sued WTC and M&T Bank, as successor by merger,[2] in New York state court, seeking money damages for breaches of contract and implied covenant of good faith. The Complaint chronicles a chain of misconduct and the later destruction of the trusts' value, and from this series of events Plaintiffs accuse WTC of three express breaches of contract and a breach of the implied covenant of good faith. First, Plaintiffs allege WTC allowed the Indenture Trustees and others to abdicate their responsibilities relating to the loan files, including by failing to "take physical possession" of the files and "require Sellers . . . to cure the documentation problems or repurchase" loans. A148 (Compl. ¶ 321). Second, Plaintiffs claim WTC failed to provide written notice of default as required by the Governing Agreements, despite its awareness of breaches of representations and warranties by Sellers. Third, Plaintiffs fault WTC for failing to intervene to compel the Indenture Trustees to act when the Servicers exercised their

---

[2] Plaintiffs later agreed M&T was not a proper defendant; because the merger was not consummated, M&T never became the successor Owner Trustee.

The fifteen trusts are also named as nominal defendants.

5

duties carelessly. This omission, Plaintiffs contend, amounts to a failure to protect the trusts. A74–75 (Compl. ¶¶ 89–92). Finally, Plaintiffs say WTC's failure to act—even if it did not amount to breach of contract—violates its implied covenant of good faith under the contracts. A75 (Compl. ¶ 93).

WTC removed the case to federal court, and the U.S. District Court for the Southern District of New York granted WTC's motion to transfer venue to the District of Delaware. There the trial judge granted WTC's Rule 12(b)(6) motion, dismissing all of Plaintiffs' claims. The trial court also held IKB S.A. "lack[ed] standing to assert any claims under the agreements" because it relinquished all claims arising from the bonds when it sold them. A13. Plaintiffs now appeal.

## II.

The trial court had removal jurisdiction under 28 U.S.C. § 1441(b). We have jurisdiction to review its final decision under 28 U.S.C. § 1291. We review *de novo* the trial court's grant of a Rule 12(b)(6) motion for failure to state a claim. *See Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 159 (3d Cir. 2017). "When conducting our review, 'we must accept the allegations in the complaint as true . . . [but] are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (alterations in original)).

Contract interpretation presents a question of law we review *de novo*. *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008). "[A] motion to dismiss must be denied" when "the contract provisions at issue are ambiguous." *In re Energy Futures*

6

*Holdings Co.*, 748 F. App'x 455, 461 (3d Cir. 2018) (applying New York law); *accord Kahn v. Portnoy*, 2008 WL 5197164, at *3 (Del. Ch. Dec. 11, 2008) (applying Delaware law). This is because "ambiguous terms are interpreted by the jury, unambiguous ones by the court." *Ram Constr. Co. v. Am. States Ins. Co.*, 749 F.2d 1049, 1052 (3d Cir. 1984).

## III.

The nub of Plaintiffs' claims is that WTC should be liable for its failure to compel other actors to carry out their obligations under the Governing Agreements. To withstand WTC's "motion to dismiss for failure to state a breach of contract claim, [Plaintiffs] must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to [Plaintiffs]." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (footnote omitted).[3] Plaintiffs' appeal hinges on the second element: whether WTC breached a contractual obligation. The Complaint documents pervasive breaches throughout the securitization chain—from Sellers that stuffed the trusts with noncompliant mortgages in contravention of their representations and warranties, to Indenture Trustees and Servicers that failed to identify these defects and carelessly serviced the loans. WTC is liable, according to Plaintiffs, because it "sat idly by

---

[3] New York law, which as noted governs the Indentures, imposes another requirement: Plaintiffs must show they performed under the contract. *See Legum v. Russo*, 20 N.Y.S.3d 124, 125–26 (N.Y. App. Div. 2015). That requirement is not at issue here.

7

watching" malfeasance instead of ensuring these actors faithfully executed their obligations under the Governing Agreements. Appellants' Br. 4. We disagree.

First, we consider and reject Plaintiffs' contention that the Governing Agreements assign WTC an overarching duty to protect the trusts. WTC agreed to perform only the modest functions enumerated in the Trust Agreement, and the Governing Agreements otherwise shield WTC from the liability asserted. Second, we analyze Plaintiffs' theories of breach individually, concluding none states a plausible claim to relief.[4]

**A.**

The plain language of the Trust Agreement belies Plaintiffs' characterization of WTC's duties as supervisory or expansive. Plaintiffs advance this position by reference to Trust Agreement language tasking WTC with the general duty "to administer the

---

[4]    The trial court determined IKB S.A. lacked standing to bring claims arising from the Notes. New York law deprives *former* securities holders of a right to sue under contracts governing securities they sold. N.Y. Gen. Oblig. § 13-107(1). IKB S.A. had sold all of its Notes by November 20, 2008, so the trial court concluded "IKB S.A. lack[ed] standing to assert any claims under the agreements" and accordingly dismissed its claims. A13.

Although the case law applying New York's bar against former holders refers to it as an issue of "standing," the provision more precisely limits the availability of a cause of action. This provision does not implicate our jurisdiction. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642–43 (2002)) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction."). We are satisfied IKB S.A. has Article III standing to sue: it suffered a redressable injury traceable to its investment in the trusts. *See id.* at 125. We need not address the question whether IKB S.A. has maintained its right to bring this suit despite selling its securities because we will affirm on the ground that Plaintiffs fail to state a claim.

Judge Hardiman sees this as a matter of standing and would dismiss IKB S.A.'s claims accordingly. This disagreement has no consequence for our disposition. We agree Plaintiffs have failed to state a claim and that their claims were thus correctly dismissed.

Trust." Appellants' Br. at 15 (quoting A197 (TA § 4.02)). This general duties provision cannot bear the weight Plaintiffs place on it. Read in the context of the Trust Agreement, this phrase obligates WTC to perform the duties mandated by the contract, which include executing documents on behalf of the trust, accepting legal process for the trust, and acting at the direction of the noteholders. Plaintiffs would have us bootstrap, from these four words, an overriding duty to protect the trusts, jettisoning provisions explicitly disclaiming WTC's responsibility to act.[5] *See Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*, 996 A.2d 1254, 1260 (Del. 2010) ("[A] single clause or paragraph of a contract cannot be read in isolation, but must be read in context.") (internal quotation marks and footnote omitted).

Plaintiffs also lean on common law trust principles to argue WTC's "paramount obligation was to protect the Trusts and [their] assets." Appellants' Br. at 15. But these are not common law trusts, and WTC is not a common law trustee. Leveraging the contractual flexibility Delaware law makes available, *see* 12 Del. C. § 3806(c), the Trust Agreement restricts WTC's duties, compelling it to act in just two instances: (1) when obligated to do so by a term of the Trust Agreement, and (2) when instructed to do so and indemnified by the certificate-holders. Otherwise, WTC owes no duty to act.

---

[5] In a similar vein, Plaintiffs attempt to fashion a broad "duty to protect" from Trust Agreement language affirming WTC will hold the collateral in trust for the exclusive benefit of the noteholders. But Plaintiffs elide this provision in their complaint. Because "arguments asserted for the first time on appeal are deemed waived," *United States v. Rose*, 538 F.3d 175, 179 (3d Cir. 2008), we will not consider it.

It is true the Trust Agreement affords WTC broad discretion to act. But Plaintiffs cannot convert this discretion into a contractual obligation. The Trust Agreement contemplates such arguments and resolves them against Plaintiffs, providing: "The right of the Owner Trustee to perform any discretionary act enumerated in this Trust Agreement or in any Basic Document shall not be construed as a duty . . . ." A201 (TA § 6.01(f)). The Trust Agreement further disclaims any responsibility for WTC concerning managing the collateral. Reading these grants of discretion as obligations conflicts with other provisions, too, which foreclose assigning WTC any implied duties under the Governing Agreements.

The plain language of the Indenture similarly limits WTC's responsibilities under those agreements. WTC executes the trust documents on behalf of the trusts (which are referred to as "Issuers"), but it is not itself responsible for carrying out the Issuers' duties. Instead, the Indenture assigns the Issuers' substantive responsibilities to other parties, not WTC.

**B.**

With this understanding of WTC's limited duties in mind, we turn to Plaintiffs' allegations of breach. As noted, Plaintiffs claim three express breaches: (1) WTC violated its duties in connection to how trust participants handled the mortgage loan files; (2) WTC violated its duty to provide notice of default; and (3) WTC breached its duty to protect the trusts by failing to ensure the Indenture Trustee and Servicers enforced the trust's rights. None of these theories of breach states a claim, and therefore Plaintiffs' breach of contract claims fail.

10

**1.**

Plaintiffs' claim that WTC violated duties concerning the loan files is unconvincing because they cannot tie WTC to the alleged transgressions through any obligation it owed under the Governing Agreements. Plaintiffs complain the Indenture Trustee never "ensure[d] that key documents for the loans were included in the mortgage files." A72 (Compl. ¶ 83). This failure transgressed the Indenture Trustee's obligation "to review (or cause to be reviewed) each of the mortgage files for the mortgage loans and certify that the documentation for each of the loans was accurate and complete." A68 (Compl. ¶ 70). WTC is liable for these failures, according to Plaintiffs, because it knew about the deficiencies yet did nothing.

No provision of the Governing Agreements holds WTC responsible for taking possession of the loan files or policing others in this way. The Trust Agreement in fact withholds from WTC any obligation to "deal with the [c]ollateral." A199 (TA § 4.04). Plaintiffs ignore this and point to Indenture provisions concerning "Protection of Collateral," but these assign duties to the *Issuer*—the trust itself.

Because "[*o*]*nly* WTC as Trustee was in a position to cause the Issuer to perform [the trust's] obligation," Plaintiffs argue the Issuers' duties pass to WTC. Appellants' Br. 15. We disagree. The Indenture contemplates the trust will retain a third-party administrator to execute its duties. It then instructs the third-party administrator to perform the Issuer's duties under the Indenture, "monitor the performance of the Issuer," and report back to WTC as needed. A2002 (Indenture § 10.01) (emphasis removed). This provision contradicts Plaintiffs' assertion that WTC is responsible for the Issuer's duties.

As noted, the Indenture says "[n]o recourse may be taken . . . with respect to the obligations of the Issuer . . . against . . . the Owner Trustee in its individual capacity . . . ." A1030 (Indenture § 10.15). This provision then references Trust Agreement terms that sharply limit WTC's potential liability. The Trust Agreement sections referenced, among other things, reiterate WTC "shall not be liable for the default or misconduct of the Depositor[,] Indenture Trustee," and others, and WTC has "no obligation or liability to perform the obligations of the Trust under this Trust Agreement or the Basic Documents that are required to be performed by the Indenture Trustee or the Securities Administrator under the Indenture . . . ." A200 (TA § 6.01(e)).The clear language of the contracts defeats Plaintiffs' theory of breach. So it fails to state a claim.

**2.**

Plaintiffs' second allegation of breach—that WTC violated the Governing Agreements by neglecting to give notice of defaults—fails for the same reason. No provision of the Governing Agreements obligates WTC to notify others of Sellers' breaches of representations and warranties. The Servicing Agreement does require that various actors—including the Seller, Master Servicer, and a Responsible Officer of the Indenture Trustee—notify the Originator when breaches of representations and warranties are discovered. But the provision makes no mention of the Owner Trustee, WTC. The Indenture requires the "Issuers" to provide notice of default. But the Issuer's obligations, as we have explained, do not pass to WTC under the terms of the Governing Agreements. Plaintiffs' attempt to bypass the clear language by reference to WTC's

12

general duty to "administer the trust" is unavailing for the reasons described above. Lacking an express provision WTC violated, Plaintiffs' allegation fails to state a claim.

## 3.

Plaintiffs' finally allege WTC "breached its contractual duties under the Governing Agreements by failing to protect the trust estate by ensuring that other parties to the Governing Agreements enforced the Trusts' rights under the Governing Agreements" and loan documents. A148 (Compl. ¶ 321). But WTC had no such duty.

As discussed, WTC had no overarching supervisory role concerning the trusts or their collateral. Even accepting Plaintiffs' characterization of rampant servicing problems, the Governing Agreements impose no relevant duty on WTC. Plaintiffs cannot hold WTC liable for others' violations. The Servicing Agreement makes clear the Master Servicer must oversee the Servicer to ensure the collateral loans are properly managed. Lacking an express hook on which to hang this allegation, Plaintiffs purport WTC had a sweeping duty to protect the trusts as evidenced by common law trustee principles and out-of-context snippets from general provisions. This allegation fails to state a claim.

## C.

Plaintiffs' breach of implied covenant of good faith claim—which essentially repackages their breach of contract claims—fares no better. The implied covenant of good faith protects against "arbitrary or unreasonable conduct" that defeats the "overarching purpose of the contract" and allows the violator to take advantage of his "position to control implementation of the agreement's terms." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (internal quotation marks and footnotes

13

omitted). To prevent such abuses, courts will imply terms "to ensure the parties' reasonable expectations are fulfilled." *Id.* (internal quotation marks and footnote omitted). Courts do so reluctantly. An implied covenant claim will only succeed when it is clear from the contract the parties would have agreed to the implied provision had they contemplated it. *See id.*

Plaintiffs' implied covenant claim tries to convert discretion into an affirmative duty. This fails for the reasons discussed above: the plain language of the Governing Agreements forecloses the implied duty Plaintiffs propose. *See Homan v. Turoczy*, 2005 WL 2000756, at *18 (Del. Ch. Aug. 12, 2005) ("[C]ourts should not imply alleged obligation where the contract addresses the subject of the alleged wrong, but fails to include the obligation alleged."). Moreover, an implied duty to protect the trusts would fundamentally alter the parties' rights and responsibilities under the agreements. It is difficult to imagine WTC—which bargained for limited liability and agreed to perform a set of modest functions in return for a $3,000 annual fee—would willingly agree to sweeping supervisory responsibility. Plaintiffs' proposed adjustment goes well beyond demanding WTC avoid "arbitrary or unreasonable" conduct. *Dunlap*, 878 A.2d at 442. Therefore Plaintiffs' implied covenant of good faith claim fails.

\*     \*     \*

Because we conclude the trial court correctly dismissed Plaintiffs' claims, we do not address whether New York law barred IKB S.A. from suing, whether the statute of limitations barred any claims, or whether the no-action clause operated to bar any claims.

### III.

14

For the reasons provided above, we will affirm the District Court's dismissal of Plaintiffs' claims.